Robert A. BROWN et ux., Petitioners,

v.

Benjamin HAVARD et al., Respondents.

No. B–8412.

Supreme Court of Texas.

Jan. 16, 1980.

Rehearing Denied March 12, 1980.

Petry & Petry, Eugene D. Stewart, Carrizo Springs, for petitioners.

Riddle, Murphrey, O'Quinn & Cannon, John O'Quinn, Houston, for respondents.

BARROW, Justice.

This is a declaratory judgment suit to determine the extent of royalty reserved to

the grantors of a deed. The questions presented are whether evidence extrinsic to the deed may be considered to explain its proper construction, or whether the present owners of the property, who are successors to the grantees in the deed, may reform it.

The jury verdict was for respondents, who are successors to the grantees; [1] however, the trial court granted judgment *non obstante veredicto* in favor of petitioners, who are the grantors of the deed in question. This judgment was based on the trial court's determination that the deed unambiguously reserved the royalty as claimed by petitioners and that any claim for reformation was barred by limitations as a matter of law. The court of civil appeals reversed and rendered judgment for respondents, holding that the deed was ambiguous and giving effect to the findings of the jury regarding the intent of the parties. It was therefore unnecessary for the court of civil appeals to consider the jury findings which established respondents' alternative claim for reformation of the deed. 577 S.W.2d 757. We affirm the judgment of the court of civil appeals.

Robert A. and Naomi Brown were co-owners of 526.34 acres of land in Maverick County, Texas. On February 23, 1950, they executed an oil, gas, and mineral lease which reserved to the lessor a royalty of ⅛ of oil or gas produced. The lease's ten-year primary term was extended until 1965 by the payment of shut-in royalties from a gas well. On May 17, 1957 the Browns assigned ½ of the royalties from their property to John A. Wuensche, Sr. by a royalty deed. Wuensche's interest was to continue for a term of five years and as long thereafter as production continued in paying quantities. This interest was terminated by the Browns in 1962.

The Browns executed a warranty deed to C. Arleigh King and Mildred Nutt King on May 24, 1963. It contains the following reservation to the Browns which is the subject of this controversy:

*"Grantors reserve unto themselves, their heirs and assigns in perpetuity an undivided one-half non-participating royalty (Being equal to, not less than an undivided ¹⁄₁₆th) of all the oil, gas and other minerals, in, to and under or that may be produced from said land;* this reservation however, being expressly subject to that certain Assignment of a one-half non-participating royalty interest assigned by Robert A. Brown and Naomi Lee Brown to John A. Wuensche, Sr., by assignment dated May 17, 1957, which is of record in Vol. 52, page 503, Deed Records of Maverick County, Texas, and to which Assignment and the record thereof reference is here made for a further description of the interests to which this reservation is made expressly subject; it being provided that any royalties paid under this reservation of royalties in Grantors shall be reduced by any royalties paid by virtue of said royalty assignment to John A. Wuensche, Sr., above described, and that any reversion of the royalties set out in said Assignment to John A. Wuensche, Sr., shall to Grantors herein, and their heirs and assigns." (Emphasis Added)

The property was eventually conveyed to the respondents, Benjamin Havard, Fred A.

---

1. The jury found substantially as follows:

"1. Robert Brown agreed to sell and convey to C. Arleigh King the land in question, including all the mineral and royalty rights, except for an undivided ¹⁄₁₆th then outstanding non-participating royalty.

"2. Any language in the deed from the Browns to Mr. King attempting to reserve to the Browns more than a ¹⁄₁₆th royalty would be contrary to the mutual agreement of the Browns and Mr. King and would be the result of an accident or mistake.

"3. At the time of the deed, the intention of the parties was that the Browns reserved by the terms of that deed a royalty equal to ¹⁄₁₆ th.

"4. The Browns and the Kings did *not* intend that the deed reserve an undivided ½ non-participating royalty interest.

"5. King did not know nor should he have known that the Browns reserved a ½ non-participating royalty interest."

Benson, and A. T. Gill in 1972. In 1973 they executed an oil and gas lease to M–Tex, Inc. which covered the entire property except for 80 acres surrounding the shut-in well that had been drilled under the 1950 lease. This well, known as the Gill No. 1, and the surrounding acreage was reserved to respondents. As a result of the 1973 lease and a subsequent modification of it, M–Tex was obligated to pay a ⅜ royalty.

Pursuant to their 1973 lease, M–Tex drilled and operated four wells. M–Tex sent division orders in December of 1975 to the Browns and to respondents to approve distribution of royalties from the wells. The division orders provided that the Browns were to receive a 1/16 royalty and respondents were to receive the rest, or 5/16. The Browns refused to sign their division order and claimed ½ of the ⅜ royalty, or 3/16. The Gill No. 1 well was produced and operated by respondents who sold the gas to Tejas Gas Corporation. The Browns claim that their reservation entitled them to one-half of the money received by respondents from the sale of gas produced from Gill No. 1.

On June 18, 1976, respondents brought suit to quiet title and secure a declaratory judgment declaring the rights to the oil and gas production as between them and the Browns. Their interpretation of the reservation in the Browns' deed is that it reserves to the Browns only a 1/16 royalty interest. In the alternative, they sought to have the Browns' deed reformed on the ground that if it had been written to reserve ½ of royalties, the reservation of this interest was the result of mistake, accident or fraud.

The jury findings, which are not challenged here by the Browns, were all in favor of respondents. By their verdict, the jury found that the Browns agreed with the Kings to reserve only a 1/16 non-participat-

ing royalty and that the intention of the reservation in question was to reserve such an interest. The jury further found that any language to the contrary in the deed would be the result of an accident or mistake. The trial court disregarded this verdict and held that the Browns were entitled to judgment as a matter of law because the reservation was not ambiguous and further, respondents' plea for reformation was barred by the four-year statute of limitations. The Browns were awarded a 3/16 royalty on the M–Tex wells and ½ of the production from the Gill No. 1 well free and clear of any expenses and costs by the trial court judgment.

The deed describes the Browns' reserved interest as follows:

"[A]n undivided one-half non-participating royalty (Being equal to, not less than an undivided 1/16) of all the oil, gas and other minerals, in, to and under or that may be produced from said land; . . . ."

The court of civil appeals held that the reservation is ambiguous because the language used is subject to two or more interpretations. Being ambiguous, extrinsic evidence was properly admissible to show the true intention of the parties. After examination of this evidence under the "no evidence" test,[2] the court of civil appeals concluded that there was sufficient evidence of probative force to support the findings of the jury as to the intention of the parties in the execution of the reservation. The court of civil appeals reversed the judgment *non obstante veredicto* and rendered judgment that the Browns are the owners of a 1/16 royalty interest in the four wells being operated by M–Tex, and the Gill No. 1 well. The court found it was not necessary to consider respondents' plea for reformation.

In *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154 (1951), we stated the test for ambiguity as follows:

---

**2.** It is fundamental that these fact findings must be upheld if there is more than a scintilla of evidence in support thereof. Moreover, in testing these findings, we must review the evidence and inferences which support the findings and reject the evidence and inferences contrary thereto. *Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263 (Tex.1974).

"In other words, if after applying established rules of interpretation to the contract it remains reasonably susceptible to more than one meaning it is ambiguous, but if only one reasonable meaning clearly emerges it is not ambiguous." In *Smith v. Liddell,* 367 S.W.2d 662 (Tex. 1963), we said that where the language contained in the instrument is subject to two or more interpretations, extrinsic evidence may be used to ascertain and give effect to the true intention of the parties.

■ We agree with the court of civil appeals that a ambiguity arises from the inclusion of the parenthetical phrase (Being equal to, not less than an undivided ⅟₁₆th) in the reservation. If the phrase were omitted, the reservation would read:

> Grantors reserve unto themselves, their heirs and assigns in perpetuity an undivided one-half non-participating royalty of all the oil, gas and other minerals, in, to and under or that may be produced from said land.

This language would reserve ½ of all the oil, gas, and other minerals produced, and not ½ of any outstanding or future royalty. *Watkins v. Slaughter,* 144 Tex. 179, 189 S.W.2d 699 (1945); *Schlittler v. Smith,* 128 Tex. 628, 101 S.W.2d 543 (1937); 2 H. Williams & C. Meyers, Oil and Gas Law § 327. However, it is apparent that the parenthetical phrase has reference to a reservation *of* royalty. An ambiguity is illustrated by the fact that the Browns claim and the trial court awarded them ½ of the minerals insofar as the Gill No. 1 well is concerned; yet construed the same reservation to entitle the Browns to ½ of the ⅜ royalty received from the four M–Tex wells.

Another ambiguity is seen in the parenthetical phrase "Being equal to, not less than an undivided ⅟₁₆th." Without the parenthesis, the reservation is either a ½ royalty or ½ of royalties as heretofore pointed out. The parenthetical language itself is subject to more than one interpretation. One interpretation is that the parties intended to reserve ½ of the conventional ⅛

royalty, "being equal to" a ⅟₁₆. The additional phrase "not less than" insured that the reservation was ½ of the conventional ⅛ royalty, and if the royalty were reduced, the Browns would still receive their ⅟₁₆. On the other hand, the parenthetical language can be construed, as urged by the Browns, to reserve ½ of the royalties contained in future leases, providing further that such share must not be less than ⅟₁₆. Such a construction must ignore the presence of the "comma" between the phrase "Being equal to" and the phrase "not less than an undivided ⅟₁₆th."

This ambiguity cannot be resolved by the references in the reservation to the Wuensche assignment. This assignment was for a specific term of five years and expired upon termination of production under the 1950 lease then in existence. In fact, no shut-in royalty was paid to Wuensche after 1962 which was prior to the execution of the 1973 lease. In any event, Wuensche was actually entitled to receive ⅟₁₆ royalty under that assignment and lease.

We agree with the conclusion of the court of civil appeals that the reservation in controversy is ambiguous and that the trial court properly admitted extrinsic evidence to ascertain the intent of the parties. This evidence, although controverted, is sufficient to support the jury verdict and the judgment of the court of civil appeals.

In any event, this judgment is supported by the jury findings which in sum found that the true intent of the agreement between the Browns and King was for the Browns to reserve a royalty equal to ⅟₁₆ and that any language in the deed to the contrary was the result of an accident or mistake.

■ It is settled law that the terms of an instrument may be avoided upon proof that the writing fails to state the agreement of the parties. In *National Resort Communities, Inc. v. Cain,* 526 S.W.2d 510 (Tex.1975), we held that one who seeks to reform a

writing on the basis of mutual mistake must satisfy two requirements: 1. He must prove the true agreement of the parties. 2. He must prove that the provision erroneously written into the instrument was there by mutual mistake. In *Morrow v. Shotwell*, 477 S.W.2d 538 (Tex.1972), we held that where the parties intended to describe a particular and identified tract of land in their contract and that they were mutually mistaken in the belief that the description used was legally sufficient for that purpose, a party would be entitled to reformation of the contract.

■ Here respondents alleged that if the reservation in the deed from the Browns to their predecessor King should be construed to reserve an interest in one-half of the royalties, this was not the intent of the parties and that the deed was the result of an accident or mistake. In such event, they sought a reformation of the deed to correctly state the interest intended to be reserved. The jury made several findings pertinent to respondents' claim for reformation: (1) that Brown agreed to sell and convey to King the land in question reserving to himself a ¹⁄₁₆ royalty; (2) that any language in the deed attempting to reserve more than a ¹⁄₁₆ would be contrary to the mutual agreement of the Browns and King and would be the result of an accident or mistake; and (3) that at the time of the deed the intention of the parties was that the Browns reserved a royalty equal to ¹⁄₁₆ by the terms of that deed.

It is clear that the record, when viewed under the "no evidence" test, fully supports the findings. King, who was a disinterested witness, testified that Brown said that he owned all the royalty, except for a ¹⁄₁₆ which he had conveyed to John A. Wuensche, Sr. This statement was true in that at the time of the conveyance to Wuensche, the land was under lease and the Browns had reserved a ⅛ royalty. The contract of sale entered into by the Browns with King explicitly states that the Browns are to reserve a ¹⁄₁₆ non-participating royalty interest.[3] An attorney selected by Brown prepared the contract of sale and deed. It was undisputed that the deed was supposed to have been prepared in accord with the contract of sale. King testified that he believed it had been so prepared until he learned in 1976 of the Browns' contention that they had reserved ½ of the royalty. He further testified that if the deed provided for more than a ¹⁄₁₆ royalty interest it would be contrary to their agreement. Neither Brown nor the attorney who drew the papers denied that the contract of sale correctly reflected the intent of the parties or that the deed was to be prepared in accord therewith. The evidence in this record supports the findings that if the deed reserved more than a ¹⁄₁₆ royalty interest, such description in the deed was the result of a mutual mistake.

■ The trial court, although not disturbing these jury findings, concluded as a matter of law that respondents' claim for reformation was barred by the four year statute of limitations. The trial court correctly held that a suit for reformation of a deed is governed by the four year statute of limitations. *Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62 (1959). It erred, however, in concluding that this claim for reformation was barred as a matter of law.

This Court, in three relatively recent cases, has rejected the contention that the

---

3. The contract of sale provides:

"Vendors agree to deliver to Purchasers a good and sufficient deed or deeds conveying the whole fee simple title of the above described real estate, and containing a clause of general warranty, however, said deed to contain an(d) exception of an undivided ¹⁄₁₆th now outstanding non-participating royalty interest of all oil, gas and other minerals in and under said land."

Another provision of said contract of sale provides:

"It is further provided that if vendors, after this date, acquire the now outstanding royalty of ¹⁄₁₆th of all oil, gas and other minerals above described, it shall be retained by vendors and not conveyed to purchasers."

grantee was charged as a matter of law with knowledge of the recitals in a deed to him. We held that the statute of limitations commenced to run in these suits for reformation when the mistake was or, in the exercise of reasonable diligence, should have been discovered. *Sullivan v. Barnett*, 471 S.W.2d 39 (Tex.1971); *McClung v. Lawrence*, 430 S.W.2d 179 (Tex.1968); *Miles v. Martin, supra*. The question of when the mistake should have been discovered was held to be one of fact in each of these cases.

In *Sullivan v. Barnett, supra*, the grantors brought suit to reform certain deeds and deeds of trust executed in 1956 because of a mutual mistake. The trial court entered judgment for grantors on the jury verdict. The court of civil appeals reversed and held that grantors were barred by the four year statute of limitations from having the mutual mistake corrected. In doing so, it applied the rule urged here by petitioners, that a grantor is charged with knowledge of the contents of his deed from the date of its execution and that limitations began to run on such date against any action to correct the deed. In rejecting this contention, we said:

> "The weight of authority is that once the presumption of immediate knowledge is rebutted, the statute of limitation will commence to run when the mutual mistake was, or in the exercise of reasonable diligence should have been, discovered."

In *McClung v. Lawrence, supra*, we reversed and remanded for trial a summary judgment granted the defendant on his plea of the four year statute of limitations in McClung's suit to reform a 1947 deed upon allegations of mutual mistake. We held that where the circumstances as shown by the record are such that the parties may have been mutually mistaken as to the legal effect of the deed in question, equity will grant relief against such a mistake of law. In such a situation the statute of limitations will commence to run when the mistake was, or in the exercise of reasonable diligence should have been, discovered.

In *Miles v. Martin, supra*, we reversed a judgment based on limitations and remanded the case for a trial of grantor's right to equitable relief of reformation because of an alleged mutual mistake as to the effect of the royalty reservation. The deed sought to be reformed had been executed almost six years prior to filing of the suit.

It is not contended that King had actual knowledge that the Browns were claiming that the deed reserved ½ of the royalty interest to them. Nor can it be said that the mistake is so plainly evident as to charge King with the legal effect of the words used. It is apparent that M–Tex considered the Browns as having reserved only a ¹⁄₁₆ interest as the proposed division orders so provided. The judges on the lower courts have disagreed as to the meaning of the clause. The members of this Court disagree. Certainly King, who was not a lawyer, cannot be charged as a matter of law with knowledge of the meaning of the reservation.

The question of whether he should have known by the exercise of reasonable diligence is one of fact. The record before us fully supports the jury finding that King did not know, nor should he have known by the exercise of reasonable diligence, that the Browns claimed that they had reserved "a one-half (½) non-participating royalty interest." King testified unequivocally that he first learned of the Browns' claim sometime in the summer of 1976 after this suit was filed. The Browns did not assert a claim to anyone that they had reserved more than a ¹⁄₁₆ non-participating royalty interest until they rejected a division order in this amount which was sent to them about December 20, 1975. Suit was filed by respondents on June 18, 1976. Prior to the Browns' rejection of the division order, King and his assignees were in possession of the land and there was nothing in the deed to King or the Browns' conduct to place them on notice as a matter of law that the Browns claimed a ½ interest.

The judgment of the court of civil appeals is affirmed.

Dissenting opinion by McGEE, J., in which GREENHILL, C. J., and POPE, J., join.

Justice GARWOOD not sitting.

McGEE, Justice, dissenting.

I respectfully dissent from the opinion of the majority and would affirm the judgment of the trial court. Accordingly, I would hold that the deed from the Browns to the Kings unambiguously reserves ½ of the ⅜ royalty from the M–Tex lease. I would also deny Havard, Benson, and Gill, the present owners of the property, the right to assert the Kings' alleged claim to reformation of the deed on the ground that it is barred by limitations.

## CONSTRUCTION OF THE BROWNS' ROYALTY RESERVATION

In 1963 Robert A. and Naomi Brown executed a deed to C. Arleigh and Mildred Nutt King. The deed contains the following reservation to the Browns:

"Grantors reserve unto themselves, their heirs and assigns in perpetuity an undivided one-half non-participating royalty (Being equal to, not less than an undivided ¹⁄₁₆th) of all the oil, gas and other minerals, in, to and under or that may be produced from said land; this reservation however, being expressly subject to that certain Assignment of a one-half non-participating royalty interest . . . to John A. Wuensche, Sr., . . . to which Assignment and the record thereof reference is here made for a further description of the interests to which this reservation is made expressly subject; it being provided . . . that any reversion of the royalties set out in said Assignment to John A. Wuensche, Sr., shall to Grantors herein, and their heirs and assigns."

Another clause makes the deed subject to a 1950, ⅛-royalty mineral lease which was kept in existence by the payment of shut-in royalties.

In construing deeds, if the language used is unambiguous, resort to extrinsic evidence to explain its meaning is improper in the absence of fraud, accident, or mistake. *Smith v. Liddell*, 367 S.W.2d 662, 665–66 (Tex.1963); *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617, 620 (1955). In this case, the trial court granted judgment *non obstante veredicto*, one ground being that the deed unambiguously reserved ½ of royalties to the Browns. Because the 1973 lease to M–Tex, a ⅜-royalty lease, was then outstanding on the property, the Browns were declared to be owners of ½ of that ⅜ royalty, or a ³⁄₁₆ royalty. I agree with the trial court's judgment that the deed can be given a definite and certain legal meaning from the language used therein, and that the Browns are entitled to ½ of royalties from the 1973 lease.

Havard, Benson, and Gill do not dispute that the Browns would be entitled to ½ of the ⅛ royalties that were payable under the 1950 lease. Their argument is that although the 1950 lease expired and a new lease to a different lessee with different royalty provisions was executed, the parenthetical language contained in the reservation clause limits the Browns' reservation to ½ of ⅛ under *all* leases. According to Havard, Benson, and Gill, the Browns are not entitled to ½ of royalties under the present ⅜-royalty lease, but instead are limited to a ¹⁄₁₆ royalty.

The majority opinion states that an ambiguity arises from the discrepancy between the trial court's award of ½ of production from the owner-produced Gill No. 1 well and its award of ½ of royalties from the 1973 lease. To base the existence of an ambiguity upon the distinction between ½ of production and ½ of royalties is to assume that distinction was an issue in this case. Neither party, however, contended that the deed should be construed to reserve ½ of production. The award of ½ of production from the Gill No. 1 well was the result of a stipulation regarding proceeds from that well only, which was entered into by the parties at trial.

The second reason given by the majority for holding the reservation ambiguous is the inclusion of the parenthetical expression, "[b]eing equal to, not less than an undivided 1/16th." I do not find that this parenthetical language creates an ambiguity. When the entire reservation clause is read, with the explanatory parenthetical, it is clear that the deed reserves 1/2 of royalties, with a minimum royalty set at 1/16.

The words, "heirs and assigns in perpetuity," indicate that the parties intended to reserve a perpetual royalty, not a royalty coincident only with the duration of the 1950 lease outstanding at the time of the deed. The parenthetical language refers to the situation under the 1950 lease and also encompasses the possibility of future leases. At the time of the deed, which was expressly subject to the 1950 1/8-royalty lease, a reservation of 1/2 of royalties was the mathematical equivalent of a 1/16 royalty. The obvious problem with simply describing the 1/2 of royalties as "being equal to 1/16," however, was that if the 1950 lease later expired, the grantees were entitled to re-lease the property for a different royalty. If the new lease called for other than a 1/8 royalty, the grantors' 1/2 of royalties would no longer be equivalent to a 1/16 royalty. *See* 2 H. Williams & C. Meyers, Oil and Gas Law § 327.1, .2 (1977). A prudent grantor who reserves a fraction *of* royalties may wish to ensure that his interest will not fall below a certain minimum. Careful drafting of royalty reservations requires that he recognize that future leases may be executed by his grantee that call for a different royalty than a lease existing at the time of the deed.

The inclusion of the additional words, "not less than an undivided 1/16th," indicates that the Browns contemplated future leases on the property after the 1950 lease expired. In the event that a future lease called for less than a 1/8 royalty, the Browns thereby ensured that their interest would be "not less than" a 1/16 royalty. If a subsequent lease again called for a 1/8 royalty, the

Browns' interest in 1/2 of royalties, or 1/16, would continue to be "not less than" 1/16. If a future lease called for more than 1/8 royalty, their interest in 1/2 of that royalty would continue to be consistent with the parenthetical language.

There is no language anywhere in the reservation clause to indicate that the Browns' royalty was to be limited to a maximum of 1/16: there is no language to the effect that 1/2 of royalties is to be equal to *not more than* 1/16. The reservation does, however, unambiguously state that the Browns' royalty interest is to be *not less than* 1/16. Describing a variable amount as being equal to not less than 1/16 has the same result as describing it as equal to or greater than 1/16. The absence of a comma between the words "equal to" and "not less than" does not change this meaning. The deed reserves 1/2 of royalties, and the explanatory parenthetical sets a minimum of 1/16. The specific fractional equivalent to 1/2 of royalties may vary according to the lease so long as the Browns received their 1/16 minimum.

There is an additional reason appearing from the deed that supports this construction of the reservation. The reservation in the Brown deed is expressly made subject to the "one-half non-participating royalty interest" assigned to John A. Wuensche and reference is made to the Wuensche deed for further description. In that deed, the language "non-participating one-half royalty interest" is used in the granting clause and subsequently described as being 1/2 of royalties payable under the existing lease or future leases. The Brown deed refers to and incorporates that definition. The Brown deed excepts the Wuensche assignment from the grant to the Kings and provides for its continuation as a reversion to the Browns. An interest of 1/2 of royalties, not a 1/16 royalty, was described in both deeds. When the parties have set out their own definitions of the terms they employ, other meanings should not be substituted. *Williams v. J. & C. Royalty Co.*, 254 S.W.2d 178, 180 (Tex.Civ.App.—San Antonio 1952,

writ ref'd). Although the Wuensche assignment may have expired at the time of the deed, the legal effect of the exception to Wuensche was not affected. "The giving of a false reason for an exception from a grant does not operate to alter or cut down the interest or estate excepted, nor dues it operate to pass the excepted interest or estate to the grantee." *Pich v. Lankford,* 157 Tex. 335, 302 S.W.2d 645 (1957). Moreover, even if Wuensche's assignment had expired, the same described interest reverted to the Browns by the terms of the deed. The royalty reserved to the Browns in their deed is a continuation of the interest assigned to Wuensche—an interest in ½ of royalties.

A profitable comparison may be made with a recently decided case that also concerns the construction of a royalty reservation clause. In *Helms v. Guthrie,* 573 S.W.2d 855 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n. r. e.), the court construed the following reservation:

> "Also, the grantors herein retain and reserve under said First Tract ½ of the ⅛th royalty (same being a ¹⁄₁₆th of the total production) of oil, gas and minerals, same being a non-participating royalty interest here retained by grantors."

*Id.* at 856. This reservation, expressly limited to "½ of the ⅛th royalty," and lacking the "not less than" language, was held to bind the grantor to a ¹⁄₁₆ royalty. Unlike the reservation in this case, there is no indication that future leases with royalties differing from ⅛ were anticipated.

### REFORMATION OF THE BROWN DEED

Havard, Benson, and Gill also contend that if the deed is found to reserve an interest in ½ of royalties, this was not the intent of the parties and the deed was the result of an accident or mistake. They argue that as present owners of the property they are entitled to a claim for reformation that the Kings might have asserted.

Generally, the terms of an instrument may not be avoided merely by showing that it is contrary to a prior agreement and one party was mistaken about its contents. *National Resort Communities v. Cain,* 526 S.W.2d 510, 513–14 (Tex.1975). The terms may be avoided, however, upon proof that the writing fails to state the agreement of the parties because of a mutual mistake. A one-sided mistake may also give rise to a right of reformation if accompanied by fraud, misrepresentation, concealment, or misleading conduct on the part of the other party. *See Stegall v. Fulwiler,* 423 S.W.2d 182, 186 (Tex.Civ.App.—Amarillo 1967, no writ). *See also Holchak v. Clark,* 284 S.W.2d 399 (Tex.Civ.App.—San Antonio 1955, writ ref'd).

This suit was filed in 1976, thirteen years after the deed from the Browns to the Kings. A suit for reformation is governed by the four-year statute of limitations. *McClung v. Lawrence,* 430 S.W.2d 179, 181 (Tex.1968); Tex.Rev.Civ.Ann. art. 5529 (Vernon 1958). Several recent cases have rejected the rule that a grantor or grantee is to be charged with immediate knowledge of a mistake contained in a deed and that limitations on an action to reform it begins to run on that date. In *Sullivan v. Barnett,* 471 S.W.2d 39 (Tex.1971), this court held:

> "[E]quity and justice being the ultimate aims of all rules of law, this and other courts have not been so rigid in their application of this rule. Numerous exceptions are as well established as the rule itself. As shown by the cases hereinafter cited, this presumption that a grantor or grantee has immediate knowledge of a mutual mistake contained in a deed is rebuttable, and there are various circumstances, such as subsequent conduct of the parties as though the deed had not contained the error, which will excuse a delay in discovery of the mutual mistake. This Court has never permitted the rule to blindfold it to the true facts concerning actual discovery of the mutual mistake and subsequent conduct of the parties with respect thereto.
>
> "The weight of authority is that once the presumption of immediate knowledge is

rebutted, the statute of limitation will commence to run when the mutual mistake was, or in the exercise of reasonable diligence should have been, discovered. . . ."

*Id.* at 45; *see McClung v. Lawrence, supra* at 181–82; *Miles v. Martin,* 159 Tex. 336, 321 S.W.2d 62, 69 (1959). Thus, a determinative question in this case is when the alleged mistake was, or should have been, discovered.

A contract of sale signed by the Browns and King before the execution of their deed states that the deed was to contain an "exception of an undivided ¹⁄₁₆th now outstanding non-participating royalty interest." An attorney selected by Brown assisted in the preparation of the deed. C. Arleigh King testified that he accepted the deed, but believed it had been prepared in accordance with the contract. King further testified that he had no actual knowledge of the Browns claim to ½ of royalties until 1976. The jury made several findings pertinent to the claim for reformation. They found that any language in the deed attempting to reserve more than a ¹⁄₁₆ royalty would be the result of an accident or mistake. They also refused to find that King knew or should have known as of 1964, the year he sold the property, that the Browns had reserved a "one-half non-participating royalty interest." The trial court, however, granted the Browns' motion for judgment *non obstante veredicto,* concluding that the claim for reformation was barred by the four-year statute of limitations.

In deciding whether the motion was correctly sustained this court is governed by the determination whether there is any evidence to raise an issue of fact. King's testimony is evidence of his lack of actual knowledge of a mistake, but there is no evidence to excuse his, or his successors', thirteen-year delay in bringing suit to reform the deed. To the contrary, the evidence in this case establishes that within a year after King accepted the deed, it was apparent to him that the reservation in the

deed differed from the contract of sale. King testified that he believed the deed complied with the contract of sale by conveying to him the entire property except a ¹⁄₁₆ royalty. One year later, in 1964, King conveyed the same property to Kenneth Loyd. King's deed to Loyd contains an exception, which King testified was intended to reflect the royalty interest previously created by the Wuensche assignment and carried forward as a reservation to the Browns in the Brown deed. King's deed described this interest as follows:

"LESS, HOWEVER, THEREFROM an undivided one-half (½) non-participating interest in and to all of the royalties on oil, gas and other minerals, it being the intent of the Grantors herein to convey to Grantee all of the minerals and an undivided one-half (½) interest in and to all of the royalties on the minerals."

This description of the Browns' reservation contains no language indicating that it is to be limited to a ¹⁄₁₆ royalty. King testified that his conveyance to Loyd was of all he understood he owned as a result of his deed from the Browns. This evidence, King's own deed to Loyd, demonstrates that King believed he owned all the property except ½ of royalties.

Nor is there evidence that King was "lulled into a sense of security" by acts consistent with his belief that the Browns had reserved only a ¹⁄₁₆ royalty. In this respect this suit is distinguishable from other reformation cases in which diligence in discovering a mistake has been discussed. *See Sullivan v. Barnett, supra; Miles v. Martin, supra.* In each of these cases the evidence suggests that conduct of the parties subsequent to the execution of the instrument was consistent with the reformation-seeking party's mistaken belief as to its contents or effect.

In *Sullivan v. Barnett,* 471 S.W.2d 39 (Tex.1971), the parties did not dispute that approximately 240 acres were included in a conveyance by mutual mistake. The grantors sought reformation against the defense

that the reformation claim was barred by the statute of limitations. This court recognized that the grantors' delay in bringing suit could be excused when they had remained in possession as though the mistake had not been made. The court noted that upon discovery of the mistake the grantors were fraudulently told that a reconveyance would be executed. Meanwhile, they "continued to live on the land and exercise dominion over it with the knowledge of [defendants' predecessor] . . .." *Id.* at 46–47. In this case the alleged mistake concerns the amount of a royalty interest, as distinguished from the size of a tract in the possession of the grantor.

In *Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62 (1959), the plaintiff sought reformation because of mistake as to the legal effect of a royalty reservation in a deed. This court held that a fact issue was raised on the issue of plaintiff's diligence in discovering the mistake because he had received delay rentals consistent with his claimed interest. He claimed a ¼ interest in minerals; the court noted that he had received ¼ of delay rentals from the land for five of the six years from the date of the conveyance to the date the suit was filed. *Id.* at 69–70. In this case, however, there is no evidence that the Kings received royalties in an amount consistent with their claim. The Browns continued to receive shut-in royalties from the 1950 lease until 1965. There is evidence that the Kings received a share of these shut-in payments, but no evidence that their share was calculated on the basis of ¹⁄₁₆ of anything.

Havard, Benson, and Gill have failed to show that King would be entitled to reformation of the deed. The evidence establishes that King knew or should have known that the Browns had reserved ½ of royalties when he conveyed the property in 1964. In 1964, limitations began to run against the reformation claim and four years later the claim was barred. Havard, Benson, and Gill acquired the property in 1972 subject to a valid limitations defense. Therefore, they are now barred from asserting the Kings' alleged right to reform the deed.

For the reasons stated, I would affirm the judgment of the trial court awarding ½ of the ⅜ royalty under the M–Tex lease to the Browns.

GREENHILL, C. J., and POPE, J., join in this dissent.