**Arthur FLIPPEN et al., Appellants,**

**v.**

**Ethel FLIPPEN et al., Appellees.**

**No. 5652.**

Court of Appeals of Texas,
Eastland.

Nov. 12, 1981.

Rehearing Denied Dec. 31, 1981.

S.W.2d 99, 103 (Tex.1977).

W. G. Thompson, Thompson & Cook, Breckenridge, Frank Jennings, Jennings, Montgomery, Dies & Turner, Graham, for appellants.

John B. McNamara, McNamara & McNamara, Waco, R. M. Rutledge, Rutledge, Rutledge & Connally, Abilene, for appellees.

McCLOUD, Chief Justice.

The question is whether the grantors in interfamily multiple partition deeds partitioning specific tracts of land to individual family members left (or intended to leave) undivided only the "usual ⅛ royalty," or all royalty including overriding royalty and royalty in excess of the usual ⅛.

Estelle Flippen, who owned approximately 4,950 acres of land in Shackelford County, on September 5, 1953, conveyed to each of her eight children, Menville Flippen, Tom Flippen, Kate Flippen Gillen, Alta Flo Flippen Burleson, Charlie Flippen Crow, Arthur Flippen, Pattie Flippen Smith, and Greta Flippen Ellis, an undivided ⅛ interest in and to all of the oil royalty, gas royalty, and royalty in other minerals, in, under and that might be produced and mined from such lands. Estelle Flippen retained all leasing rights and all future bonuses and delay rentals. Thereafter, she executed two oil and gas leases, containing a ⅛ royalty, covering portions of the Flippen land, to SoRelle and SoRelle, who in each instance assigned a ⅟₁₆ of ⅞ overriding royalty back to Estelle Flippen. Production was obtained on the two leases. The ⅛ royalty was paid to the Flippen children and the overriding royalty was paid to Estelle Flippen. On May 21, 1956, Estelle Flippen died leaving a will dated October 4, 1951. Under her will, which was probated, she devised to each of her eight children an undivided ⅛ interest in and to all of the oil, gas and other minerals in the Flippen lands. The surface, however, was devised in specific tracts to each child. After discovering a shortage of acreage in some of the devised tracts, the lands were surveyed, and in 1957 the Flippen children partitioned the lands by executing multiple partition deeds. Two tracts were partitioned to Pattie Flippen Smith who had purchased the interest of Tom Flippen.

Plaintiffs, Arthur Flippen, Greta Flippen Ellis, and Pattie Flippen Smith, sued defendants, Ethel Flippen, Kate Flippen Gillen, The Four J. Cattle Company, Mary Estelle Campbell, Barney N. Burleson, Jr., and Charlie Flippen Crow, seeking a declaratory judgment that the royalty reservations contained in the partition deeds signed by the Flippen children reserve an undivided royalty interest in only the "usual ⅛ royalty." Plaintiffs alleged that the reservations are unambiguous. They alternatively alleged that if the reservations are ambiguous, the parties intended that the nonparticipating royalty owners in the partitioned tracts share only in the usual ⅛ royalty, and not in any royalty or overriding royalty in excess of the usual ⅛ retained by or assigned to the owner of the specific tract. Plaintiffs further alternatively alleged mutual mistake and sought reformation. Defendants answered that the reservations contained in the partition deeds are unambiguous, and that they are entitled to share in all of the royalty, including overriding royalty and royalty in excess of ⅛. They further alleged that plaintiffs' alternative plea for reformation is barred by Tex.Rev.Civ.Stat.Ann. art. 5529 (Vernon 1958).

The jury answered all special issues in favor of plaintiffs.[1] The trial court, however, granted defendants' motion to disregard certain jury findings, and entered judgment for defendants. The trial court disregarded Special Issue 1, regarding the intent of the Flippen children who signed the partition deeds, after concluding that the reservations in the deeds are unambiguous. The court disregarded Special Issue 4

---

1. The jury made the following findings:

*Special Issue 1*—It was the intention of the children of Estelle Flippen who executed the partition deeds to share only in the usual ⅛ nonparticipating royalty.

*Special Issue 2*—Before executing the partition deeds the Flippen children agreed that in partitioning the Flippen land they would share only in the usual ⅛ nonparticipating royalty.

*Special Issue 3*—Any provision in the Flippen partition deeds which would entitle those who signed the partition deeds to share in more than the usual ⅛ nonparticipating royalty was the result of a mutual mistake.

*Special Issue 4*—The plaintiffs did not discover, or in the exercise of reasonable diligence should not have discovered, the mistake in the partition deeds more than four years before November 12, 1979.

after concluding that the evidence conclusively established that plaintiffs discovered, or in the exercise of reasonable diligence should have discovered, the alleged mistake in the partition deeds more than four years before suit was filed. Plaintiffs appeal. We reverse and remand for entry of judgment.

■ If the reservations are unambiguous, the trial court properly disregarded the jury's answer to Special Issue 1. *Smith v. Liddell*, 367 S.W.2d 662 (Tex.1963); *Portwood v. Buckalew*, 521 S.W.2d 904 (Tex.Civ. App.—Tyler 1975, writ ref'd n. r. e.).

After Estelle Flippen's will was probated, all of the Flippen children except Tom, who had sold his interest to Pattie, joined in executing eight separate partition deeds in order to equalize the division of the surface estate. Of these eight deeds, plaintiffs cite the following provisions of the Kate Flippen Gillen deed as an example of the alleged ambiguity existing in the multiple partition deeds. We have designated the paragraphs in issue as I and II, although they are not numbered or designated in the instruments in controversy. The cited paragraphs provide:

### I.

It is expressly agreed and stipulated, however, that the said Menville Flippen; Mrs. Charlie Crow; Arthur Flippen; Mrs. Alta Flo Burleson; and Mrs. Greta Beatrice Ellis do each reserve and retain in ourselves, our heirs and assigns, an undivided ⅛th of the 1/16th of ⅞ths overriding royalties, and of the oil payments out of 1/16th of ⅞ths of oil, gas and minerals produced as reserved by, or granted to said Mrs. Estelle Flippen; and Mrs. Pattie L. Smith reserves and retains in herself, her heirs and assigns, an undivided ⅔ths of 1/16th of ⅞ths overriding royalties hereinabove mentioned in so far as same cover any portions of the lands hereby conveyed; and an undivided ¾th of the ⅛th royalties accrued and to accrue under leases executed by Mrs. Estelle Flippen and now outstanding on portions of the lands hereby conveyed, said

reservation of such overriding royalty interests, and oil, gas and mineral payments to fully terminate upon the expiration of the leases thereon executed by Mrs. Estelle Flippen in so far as same cover portions of the land hereby conveyed.

### II.

It is further expressly agreed and stipulated that the said Menville Flippen; Mrs. Charlie Crow; Arthur Flippen; Mrs. Greta Beatrice Ellis; and Mrs. Alta Flo Burleson do each reserve and retain in ourselves, our Heirs and assigns in perpetuity, an undivided one-eighth; and Mrs. Pattie L. Smith reserves an undivided two-eighths, of the oil royalty, gas royalty, and royalty in casinghead gas, gasoline, and royalty in all other minerals in and under and that may be produced and mined from the lands hereby conveyed, non-participating in cash bonuses, and deferred rentals to accrue under any oil, gas or mineral lease hereafter to be executed on the lands aforesaid, or any part of same, the right to execute any and all oil, gas and mineral leases thereon being hereby expressly granted to Grantee, her Heirs and assigns, without the joinder of Grantors, their Heirs or assigns, but that every such lease shall provide for at least a royalty on oil of the usual ⅛th to be delivered free of cost in the pipe line, and a royalty on natural gas of ⅛th of the value of same when used or sold off the premises, or ⅛th of the net proceeds of such gas, and ⅛th of the net amount of gasoline manufactured from natural or casinghead gas.

■ Plaintiffs point out the requirement that each oil and gas lease executed provide for at least the usual ⅛ royalty on oil and gas, while the reservation to grantors is not limited to the usual ⅛ royalty. They contend that uncertainty exists in the deeds covering lands subject to the SoRelle leases in that grantors reserved an interest in the overriding royalty that had been assigned to Estelle Flippen. Plaintiffs argue that if

the parties to the partition deed had intended to leave undivided "all royalty" and not just the "usual ⅛," the separate reservation of the overriding royalty interest would have been unnecessary because it would have been covered by the royalty reservation.

The reservation cited by plaintiffs and labeled in this opinion as paragraph I is found only in the partition deeds to Kate Flippen Gillen, Alta Flo Burleson, and Arthur Flippen. A different reservation regarding existing oil and gas leases and overriding royalty appears in the deed to Greta Flippen Ellis. One of the deeds to Pattie Flippen Smith specifically referred to an existing oil and gas lease in favor of Atlantic Refining Company. The remaining deeds covered lands not under lease and contained no reference to existing leases or overriding royalty. All of the partition deeds contained the reservation labeled herein as paragraph II. The deeds are consistent. Each conforms to the existing condition of the particular tract at the time of execution. The inclusion in certain deeds of language regarding the overriding royalty and the oil payment held by Estelle Flippen does not create an ambiguity. The limitation that future leases executed by the "Grantee" provide for "at least a royalty on oil of the usual ⅛" creates no ambiguity. This provision merely restricts the grantee's authority to make oil and gas leases. We hold that the partition deeds are so worded that each can be given a certain or definite meaning. The reservation of royalty contained in paragraph II is not limited to the "usual ⅛ royalty." The partition deeds are not ambiguous and the court properly disregarded Special Issue 1. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 153, 243 S.W.2d 154 (1951).

■ The trial court disregarded the jury's answer to Special Issue 4, and held that the evidence conclusively established that plaintiffs' suit for reformation was barred by the four-year statute of limitations. In deciding this point, we must review the evidence in its most favorable light, considering only the evidence and in-

ferences which support the finding, and rejecting the evidence and inferences contrary to the finding. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex.1974).

There is no evidence of any party claiming an interest in overriding royalty or royalty in excess of ⅛ until 1979 when defendants refused to sign the division orders issued by Texas Oil and Royalty-Corporation, crediting Greta Flippen Ellis with a 3⁄16 of ⅝ overriding royalty. Prior to that time the conduct of defendants and their predecessors indicated that they agreed with plaintiffs that the Flippen partition deeds left undivided only the "usual ⅛ royalty," and that overriding royalty belonged exclusively to the individual lessor of the particular tract who retained or acquired the overriding royalty by assignment from the lessee. For many years the defendants or their predecessors signed division orders which credited overriding royalty to Pattie Flippen Smith or Greta Flippen Ellis. The defendants and their predecessors in title knew that Pattie and Greta were paid overriding royalty from leases covering their respective tracts. All of the parties involved in the instant suit except Charlie Flippen Crow have executed oil and gas leases on tracts held by them under the partition deeds which provide for an overriding royalty interest in favor of the individual lessor in addition to the royalty provided for in the lease. In 1962, Pattie Flippen Smith executed an oil and gas lease to John D. Willett, Jr., wherein she reserved a 1⁄16 of ⅞ overriding royalty. Thereafter, a division order was prepared which credited the overriding royalty to all of the Flippen children. This division order was not signed by any of the parties. Pattie testified that the division order was improperly prepared and that all of the other children willingly signed instruments necessary to correct the problem. There is in the record an exhibit dated February 27, 1964, signed by all the Flippen children assigning the 1⁄16 of ⅞ overriding royalty reserved in the Willett lease to Pattie. The trial court apparently concluded that this assignment and the unsigned division order conclusively established that in 1964 plaintiffs knew, or

should have known, of the alleged mistake in the partition deeds. In our opinion these instruments do not conclusively establish that the suit is barred by limitations. There is no explanation in the record concerning the assignment. The assignment is consistent with plaintiffs' position that none of the other children ever claimed any interest in overriding royalty until 1979. In *Brown v. Havard*, 593 S.W.2d 939 (Tex. 1980) the court emphasized the importance of an adverse "claim" being asserted. In the instant case, no claim was ever asserted by defendants for an interest in overriding royalty or royalty in excess of ⅛ until 1979. We hold that there is some evidence to support the jury finding that plaintiffs did not discover, or in the exercise of reasonable diligence should not have discovered the mistake in the partition deeds more than four years before suit was filed.

■ The trial court did not disregard Special Issues 2 and 3, but defendants, by cross-points, contend that there is no evidence to support these findings. In these issues, the jury found that the parties to the partition deeds agreed to share only in the usual ⅛ nonparticipating royalty and that any provision which would entitle those who signed the partition deeds to share in more than the usual ⅛ nonparticipating royalty was the result of a mutual mistake. Upon examination of the record under the "no evidence" standard, looking only at the evidence and inferences in support of the jury's findings, *Martinez v. Delta Brands, Inc.*, supra, we think that there is some evidence to support the jury's answers to these issues.

The court in *Brown v. Havard*, supra, held that a party seeking to reform an instrument because of mutual mistake must prove the true agreement of the parties, and further, that the provision erroneously written into the instrument was there by mutual mistake. It has been said that where parties are mutually mistaken as to the legal effect of provisions in an instrument, the equitable remedy of reformation is available, if circumstances otherwise warrant. *McClung v. Lawrence*, 430 S.W.2d 179 (Tex.1968).

■ Pattie Flippen Smith testified that as a result of discussions with Arthur Flippen, Greta Flippen Ellis, and Alta Flo Burleson, the parties involved in these conversations agreed that only the ⅛ royalty was to be left undivided. She also testified that she explained this to the attorney who prepared the partition deeds before the deeds were prepared. There is no direct testimony that all of the Flippen children, who lived in different sections of the state, ever discussed the royalty provisions included in the partition deeds. However, shortly after the partition deeds were signed, Pattie Flippen Smith executed an oil and gas lease containing a ⅛ royalty and an additional ¹⁄₁₆ of ⅞ overriding royalty. After production was obtained, a division order was prepared crediting each of the Flippen children who signed the partition deeds with an interest in the ⅛ royalty provided for in the lease. Pattie Flippen Smith was the only Flippen child credited with an interest in the overriding royalty. The testimony shows that all of the children who participated in the partition deeds were aware that Pattie was the only Flippen child receiving the overriding royalty. None of the children objected or complained that payment of all of the overriding royalty to Pattie Flippen Smith was improper. In 1964, the Flippen children assigned all the overriding royalty payable under the John D. Willett, Jr., lease to Pattie Flippen Smith. The partition deeds were prepared by the attorney for the estate of Estelle Flippen. In his letter of transmittal addressed to "Arthur Flippen and the Flippen Heirs," the division of the mineral interests in the partition deeds was described in part as follows:

> Each party shares equally in the payment of the rentals to be due from Atlantic Refining Company November 26, 1957, and if there should be any production they will share equally in the ⅛ royalties but when the Atlantic leases expire the only interest held by the other Heirs who are not getting lands covered by said leases will be the ¼ of the ⅛ royalties. . . .

This transmittal letter was sent to Arthur Flippen for circulation among all the Flippen children with the eight partition deeds. As the court noted in *Louviere v. Power*, 389 S.W.2d 333 (Tex.Civ.App.—Waco 1965, writ ref'd n. r. e.), mutual mistake is rarely established by the admissions of the parties, rather, it is generally established from all the facts and circumstances surrounding the parties and the execution of the instrument.

Judgment of the trial court is reversed, and the cause is remanded to the trial court for entry of a judgment reforming the partition deeds in question in accordance with this opinion.