Julia Authelia WINSLOW, et al.

v.

Edwin V. ACKER, et al.

No. 04–88–00507–CV.

Court of Appeals of Texas,
San Antonio.

Sept. 13, 1989.

Rehearing Denied Oct. 18, 1989.

T. Kellis Dibrell, Samuel D. Dibrell, Dibrell, Dotson, Dibrell, & Dibrell, San Antonio, for appellants.

J.R. Schneider, J.R. Schneider, Jr., Schneider & McWilliams, George West, for appellees.

Before BUTTS, CHAPA and BIERY, JJ.

## OPINION

BIERY, Justice.

This appeal follows a suit filed by appellants, who are non-executive owners of a portion of a four-fifth ($\frac{4}{5}$) interest in the mineral estate of certain lands located in McMullen County, Texas. Appellants sought to recover from appellees their share of overriding royalties assigned to Johnie Lorene Acker and her husband, Edwin V. Acker, Sr., as well as overriding royalties assigned to their son, Edwin V. Acker, Jr. Appellants also claimed breach of fiduciary duty and conspiracy by appellees in obtaining the overriding royalties. In addition, appellants claimed that Edwin V. Acker, Jr. tortiously interfered with appellants' contractual rights and should pay exemplary damages as a result of such interference.

Appellees answered and counterclaimed to obtain a declaration of their right to the overriding royalties and for attorney fees under the Declaratory Judgments Act.[1] Subsequently, appellees moved for summary judgment, and the appellants responded. The trial court indicated that the summary judgment would be granted but wanted to resolve the matter of attorney fees before signing the final judgment. Prior to the hearing on attorney fees, appellants filed a motion to strike appellees' counterclaim for declaratory relief and for attorney fees under the Declaratory Judgments Act. At the hearing, the trial court overruled appellants' motion to strike. Appellees non-suited their claim for attorney fees after appellants requested a jury for the determination of attorney fees.

On August 17, 1988, the trial court entered a summary judgment in favor of appellees. The summary judgment declared that the non-executives had no right, title or interest in either the overriding royalties assigned to Johnie Lorene Acker and her husband, Edwin V. Acker, Sr., or the overriding royalty assigned to Edwin V. Acker, Jr. The judgment also decreed that the non-executives had reserved unto themselves, their heirs and assigns, an undivid-

---

1. TEX.CIV.PRAC. & REM.CODE ANN. § 37.001     *et seq.* (Vernon 1986).

ed four-fifths (⅘) of one-eighth (⅛) royalty, and granted to Johnie Lorene Acker the executive rights and the right to receive all benefits derived from leasing the mineral estate, including overriding royalties and royalties over and above four-fifths (⅘) of one-eighth (⅛).

Appellants advance four points of error in which they challenge the trial court's denial of appellants' motion to strike appellees' counterclaim for declaratory relief and request for attorney fees under the Declaratory Judgments Act, as well as the trial court's granting summary judgment in favor of appellees. We affirm the judgment of the trial court.

Before we address appellants' points of error, we will review the relevant facts. Johnie Lorene Acker was one of five children of J.E. Murphy, deceased. In the partition of Murphy's estate, two tracts of land in McMullen County, Texas, aggregating 1,200 acres, were awarded and set apart to Johnie Lorene Acker by partition deed (the "Acker Partition Deed") from her sisters, Edna Mae Jones, Mabel Mullin Snowden and Julia Authelia Akers (who is now Julia Authelia Winslow, an appellant herein) and her brother, Emmett Granvel Murphy. The partition deed to Johnie Lorene Acker setting apart to her the 1,200 acres of land therein described contained the following reservation:

> Provided, however, it is expressly understood and agreed by each and all of the parties hereto that no part of the oil, gas, or other minerals in, on, or under the above-described lands are hereby conveyed or are intended or affected by this instrument except as hereinafter provided, and the parties hereto, their respective heirs and assigns, shall continue to own and hold in common all of the oil, gas and other minerals, in, on, and under all of the above-described lands in the same undivided proportion that said parties now own and hold said oil, gas and other minerals together with the right to ingress and egress at all times for the purposes of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom, and none of the royalties, reversionary interests, or other rights of said parties under existing oil, gas and mineral leases shall be affected in any manner by this instrument; it being further provided, however, anything in the foregoing to the contrary notwithstanding, that the grantee of the surface estate herein, Johnie Lorene Acker, shall have the exclusive right to execute, without the joinder of any of the grantors herein, any oil, gas or mineral lease that she desires on any such terms as she may desire, and receive, as her separate property, such bonuses, oil payments, and rentals as may be paid under said oil, gas and mineral leases so executed by her, except that she shall reserve in each oil, gas, and mineral lease so executed by her a base one-eighth (⅛) royalty interest for the benefit of herself and the other four children of J.E. Murphy, deceased, grantors herein, in the same proportion they now own same.

In the partition of the Estate of J.E. Murphy, the other partition deeds were all executed in October, 1948, by the same five children. One of the partition deeds awarded and set apart to Edna Mae Jones certain lands in McMullen County, Texas. One of the partition deeds awarded to Julia Authelia Akers (now Julia Authelia Winslow) certain lands upon which she and her husband were then living in LaSalle County, Texas. One of the partition deeds awarded and set apart to Emmett Granvel Murphy certain lands in McMullen and Duval Counties, Texas. Each of the four partition deeds contained identical provisions.

Mabel Mullin Snowden, one of the children of J.E. Murphy, had acquired a tract of land prior to his death. These lands were situated in LaSalle and Dimmit Counties, Texas, conveyed to her by deed on September 28, 1945, and recorded in the deed records of LaSalle County, Texas. This conveyance to Mabel M. Snowden included the oil, gas and mineral estate in the lands therein described. Following the death of her father and by deed dated October 27, 1948, Mabel M. Snowden conveyed to her sisters, Edna Mae Jones, Johnie Lorene Acker, Julia Authelia Akers and

her brother, Emmett Granvel Murphy, in equal shares, an undivided four-fifths (⅘) interest in and to all the oil, gas and minerals acquired by her by such deed (the "Snowden Deed") of September 28, 1945. Edna Mae Jones, Johnie Lorene Acker, Mabel Mullin Snowden, Julia Authelia Akers and Virginia Gertrude Akers Murphy (the surviving wife of Emmett Granvel Murphy) entered into a Declaration and Agreement, dated December 9, 1953, and recorded it in the deed records of LaSalle County, Texas. This deed confirmed the parties' intentions with respect to the rights of the surface owner and the sharing of any royalties by the surface owner.

Johnie Lorene Acker executed four oil and gas leases, each conveying a portion of the lands awarded and set apart to her in the partition deed to her, each lease being to Murphy H. Baxter, as lessee. Murphy H. Baxter assigned to Johnie Lorene Acker and her husband, Edwin V. Acker, Sr., a five and one-half percent (5½%) overriding royalty in and to the four leases by assignment dated March 24, 1981, and recorded in the deed records of McMullen County, Texas.

Johnie Lorene Acker died April 8, 1983, and her interest in the overriding royalty passed to her sons, Edwin V. Acker, Jr. and Emmett A. Acker, as independent co-executors and trustees under her will. Edwin V. Acker, Sr., died November 4, 1987, and Edwin V. Acker, Jr. and Emmett A. Acker were appointed independent co-executors of his estate and have been substituted as legal representatives of Edwin V. Acker, Sr., in his stead in this cause.

In their first point of error, appellants contend that the trial court erred in finding that the terms "base one-eighth royalty" in the four partition deeds; "basic one-eighth royalty," in the Declaration and Agreement and "above the one-eighth royalty" in the Snowden Deed, should be construed together and interpreted as limiting the non-executives' mineral interest to only four-fifths (⅘) of a one-eighth (⅛) royalty.

Appellants have referred to alleged findings by the trial court and the basis for the trial court's decision throughout their argu-

ment. Appellants' conclusions and assertions as to the trial court's findings and the basis for the trial court's decision are unsupported by the record. The trial court made no findings of fact and the trial court gave no specific reasons for its decision. Further, findings of fact are not made in summary judgment proceedings. Even if the court were to give an incorrect reason for its judgment, the judgment must be upheld on any legal theory before this Court. *Guaranty County Mutual Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex. 1986).

Appellants' argument under point of error one contains two interrelated contentions. First, appellants allege that a question of fact exists due to an ambiguity relating to the terms "base one-eighth royalty," and "basic one-eighth royalty" in the Acker Partition Deed. Second, appellants assert that the Snowden Deed is subject to the ambiguous language contained in the Acker Partition Deed, thereby raising a fact question as to the construction of the Snowden Deed. We disagree with appellants' initial contention that the Acker Partition Deed is ambiguous. Therefore, appellants' argument concerning the application of the Acker Partition Deed to the Snowden Deed is moot.

■ In considering appellants' argument concerning an alleged ambiguous term, we must first determine whether the document is in fact ambiguous. If we so conclude, then extrinsic evidence may be considered to determine the intent of the parties. Generally, construction of an ambiguous document presents a question of fact, and summary judgment would, therefore, be improper. However, undisputed parol evidence may resolve the ambiguity as a matter of law. *Security Savings Ass'n v. Clifton,* 755 S.W.2d 925, 931 (Tex.App.—Dallas 1988, no writ).

The interpretation of an unambiguous deed presents a question of law for the court. *Altman v. Blake,* 712 S.W.2d 117, 118 (Tex.1986). The parties' intent must be ascertained by applying the "four corners rule." *Id.* In so doing, the court must recognize that the parties "intend every

clause to have some effect and in some measure to evidence their agreement." *Id.*

Appellants contend that the trial court erred by failing to subject the reservation in the Acker Partition Deed to the applicable rules of interpretation and construction, so as to give effect and harmonize every provision contained in the reservation. Appellants then claim that the legal interpretation of the reservation yields a different result than that reached by the trial court. Finally, appellants conclude that the trial court's construction of the Acker Partition Deed has the effect of rendering meaningless the broad mineral interest in the first part of the reservation clause.

The first portion of the deed declares that no part of the minerals are conveyed or affected "except as hereinafter provided." That portion of the reservation concludes that "none of the royalties, reversionary interests, or other rights of said parties under existing oil, gas and mineral leases shall be affected in any manner by this instrument," thereby limiting the foregoing language to those rights of the parties existing under leases in existence at the time of the execution of the partition deed. The second portion of the reservation begins, "it being further provided, however, anything in the foregoing to the contrary notwithstanding," and then strips the grantors of four of the five essential elements of a mineral interest, leaving only the right of the grantors to receive a portion of the royalties under future leases. *See Altman v. Blake,* 712 S.W.2d 117, 118 (Tex.1986) (holding that the five essential elements of a severed mineral estate, are (1) the right to develop [the right of ingress and egress]; (2) the right to lease [the executive right]; (3) the right to receive bonus payments; (4) the right to receive delay rentals and (5) the right to receive royalty payments). By its express terms, the second part of the reservation controls the preceding portion.

The gist of appellants' argument is that the deed is unclear as to whether they are entitled to a set fraction of production or fractions of subsequent royalties to be determined by the terms of future leases.

Appellants' assertions are viable only if we ignore the introductory phrase of the second part of the reservation. Ironically, their arguments can be supported only if we disregard the case law they attempt to use to support their argument.

In *Tiller v. Tiller,* 685 S.W.2d 456 (Tex. App.—Austin 1985, no writ) and *Helms v. Guthrie,* 573 S.W.2d 855 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.), the owners of an interest in a fraction of production were limited to that fraction and were not entitled to a "fraction of royalty" to be determined upon execution of some future lease. Appellants are attempting to construe the language under the Acker Partition Deed so as to permit the appellants to share in four-fifths (⅘) of whatever royalties may be contracted for, so long as such royalty is at least a royalty of one-eighth (⅛).

Appellants cite *Flippen v. Flippen,* 628 S.W.2d 462 (Tex.App.—Eastland 1981, no writ) to support their construction of the reservation. Under the partition deeds in *Flippen,* the parties were given a specific fractional interest "of the oil royalty, gas royalty, and royalty in casinghead gas, gasoline and royalty in all other minerals." *Id.* at 465. The same clause which reserved the undivided interest later provided that any future lease shall provide for at least a royalty "of the usual [one-eighth] ⅛." *Id.* The court held that the later restriction on the grantees' authority to make oil and gas leases did not create an ambiguity or alter the specific reservation of royalty as provided for in the partition deeds. *Id.* at 466. The language in the *Flippen* deeds is clearly distinguishable from the reservation in the Acker Partition Deed.

In the Acker Partition Deed, the parties expressly agreed and contracted that Johnie Lorene Acker "shall reserve in each oil, gas and mineral lease so executed by her, a base one-eighth (⅛) royalty interest for the benefit of herself and the other four children of J.E. Murphy, deceased, grantors herein, in the same proportion they now own the same." Appellants in effect reserved four-fifths (⅘) of one-eighth (⅛), or

four-fortieths ($\frac{4}{40}$), of production from the lands described in the Acker Partition Deed.

The court in *Tiller, supra,* held that while the partition deed in question in one section used the phrase "all of the $\frac{7}{8}$ lease hold rights," the deed apparently conveyed outright ownership of the mineral estate to each individual under his respective tract. The court further held that:

Each tract was subject to a $\frac{1}{8}$ royalty interest which was to be shared among the partitioners. The owner of each individual tract would receive $\frac{2}{9}$ of the $\frac{1}{8}$ royalty with each remaining partitioner receiving $\frac{1}{9}$ of $\frac{1}{8}$ (which was clearly expressed as $\frac{1}{72}$) of the minerals in and under the tracts conveyed to their copartitioners.

The partition deed expressly granted the owner of each individual tract all rights regarding the execution of oil and gas leases on his tract as well as the right to receive all bonus monies or other considerations. The only restriction on the individual owners as to the development of their mineral estate was a provision that any lease must provide at least a $\frac{1}{8}$ royalty interest to be shared, as described above, among the original partitioners and their successors.

685 S.W.2d at 458. *Tiller* cites with approval *Helms v. Guthrie,* 573 S.W.2d 855 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.), which held that reservation of "$\frac{1}{2}$ of the $\frac{1}{8}$th royalty (same being a $\frac{1}{16}$th of the total production) of oil, gas and minerals" was a contractual limitation and concluded that Helms owned a 'fractional royalty,' of $\frac{1}{16}$th of the total production, not a 'fraction of royalty,' determinable upon the execution of some future lease." *Id.* at 857. In addition, *Tiller* held that the partition deed contained clear and unambiguous language that conveyed $\frac{1}{9}$ of the $\frac{1}{8}$ royalty, ($\frac{1}{72}$) of all the oil, gas and other minerals produced from said land." Therefore, the court rejected the arguments that the deed was ambiguous. 685 S.W.2d at 458.

■ Appellants also argue that ambiguity exists in the Acker Partition Deed due to the varying interpretations of the terms "base" and "basic" one-eighth royalty. Appellants have attempted to create an ambiguity by focusing on out-of-context words or phrases, as opposed to interpreting such words or phrases within the context of the document as a whole.

The use of the terms "base" and "basic" were clearly not intended to expand or contract the fractional royalty interest reserved by the grantors in the Acker Partition Deed. The grantors reserved their portion ($\frac{4}{5}$) of the one-eighth ($\frac{1}{8}$) royalty for future leases. The terms "base" and "basic" are descriptive, not modifying, terms indicating the type of royalty from which the fractional interest was to be reserved.

Appellants' complaints concerning their interest in the Snowden Deed are premised on their incorrect argument that the Acker Partition Deed is ambiguous. Therefore, the remainder of appellants' argument under this point of error is moot. Point of error one is overruled.

In their second point of error, appellants contend that the trial court erred in finding that they were not entitled to share in the overriding royalties received by Johnie Lorene Acker and her husband, and by Edwin V. Acker, Jr. Appellants assert that appellees identified certain mineral interest fees as bonus payments rather than royalties and that appellants are entitled to $\frac{4}{5}$ of these proceeds.

■ Questions concerning the classifications of royalty and mineral interests are immaterial to our disposition of this case. It is clear from the Acker Partition Deed that appellants parted with any rights to participate in bonuses, rentals, oil payments and production over and above an undivided four-fifths ($\frac{4}{5}$) of a base one-eighth ($\frac{1}{8}$) royalty. The grantees in the Acker Partition Deed contractually limited their participation in the production from the property to sharing in their proportionate part of the one-eighth ($\frac{1}{8}$) royalty. Appellants are entitled to nothing more. Point of error two is overruled.

In their third point of error, appellants argue that the trial court erred in granting

summary judgment where certain fact questions remained. Specifically, appellants assert that the following fact questions are in contention: whether the executive holder breached her duty of utmost good faith and fair dealing by obtaining overriding royalties to the exclusion of the non-executives; whether the appellees conspired to obtain assignments of overriding royalties with the intent to defraud the non-executives of their proportionate interest in oil and gas production; and whether appellee Edwin V. Acker, Jr. tortiously interfered with appellants' contractual rights.

■ There can be no breach of duty by the executive receiving an overriding royalty interest where the non-executives are entitled to participate only in a fraction of the production from the property. This is the effect of the holdings in *Helms* and *Tiller*. Furthermore, the questions of conspiracy and tortious interference of contract become moot, because there can be no conspiracy to deprive appellants of an interest which they are not entitled to receive. Nor could Edwin V. Acker, Jr. have interfered tortiously with appellants' contract rights if appellants were not entitled to share in more than their proportionate part of four-fifths ($\frac{4}{5}$) of one-eighth ($\frac{1}{8}$) royalty. Point of error three is overruled.

In their fourth point of error, appellants argue the trial court erred in failing to strike appellees' counterclaims for declaratory relief and request for attorney fees under the Declaratory Judgments Act. Appellants assert that the subject matter of the counterclaim was already pending before the court, and the declaratory relief was sought for the sole purpose of providing a vehicle to obtain attorney fees.[2]

The Declaratory Judgments Act is not available to settle disputes already pending before the court. *John Chezik Buick Co. v. Friendly Chevrolet Co.*, 749 S.W.2d 591, 594 (Tex.App.—Dallas 1988, writ denied). However, when a declaratory judgment counterclaim has greater ramifications than the original suit, the court may allow the counterclaim. *See Placid Oil Co. v.*

*Louisiana Gas Intrastate, Inc.*, 734 S.W.2d 1, 5 (Tex.App.—Dallas 1987, writ ref'd n.r.e.).

■ In this case, appellants' lawsuit sought recovery of their alleged proportion of the overriding royalty interests which were assigned to appellees. The counterclaim filed by appellees would have the effect of settling all future disputes as to the granting of royalties under the partition deed. Thus, the trial court did not err in allowing the appellees' counterclaim to remain on file.

■ In any event, appellants have failed to preserve this point of error. The trial court signed a docket control and pre-trial order on February 1, 1988. The trial court set the deadline for amendments to pleadings by appellants for February 19, 1988. Appellants filed no special exceptions to appellees' counterclaim for declaratory relief. Appellants' motion to strike the counterclaim for declaratory relief was filed on or about August 12, 1988. Therefore, on that ground alone, the trial court was within its discretion in denying appellants' motion. Appellants' fourth point of error is overruled.

The judgment of the trial court is affirmed.

---

**2.** Appellees non-suited their claim for attorney fees.