In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-07-364 CV


 ______________________



NEXSTAR BROADCASTING, INC. D/B/A KBTV NBC 4, Appellant



V.



JENNIFER GRAY AND KTBS, INC
., Appellees






On Appeal from the 60th District Court


Jefferson County, Texas


Trial Cause No. B-174,467






MEMORANDUM OPINION


 Nexstar Broadcasting, Inc. d/b/a KBTV NBC 4 appeals a judgment rendered in a
lawsuit filed against former employee Jennifer Gray for breach of contract and against Gray's
subsequent employer, KTBS, Inc., for interference with the contract. A jury awarded Nexstar
$1 in nominal damages from Gray on the breach of contract claim, and $2,000 in actual
damages from KTBS on the tortious interference with the contract claim. The trial court
granted Gray a declaratory judgment, ruling that a liquidated damages provision in the
contract was an unenforceable penalty as a matter of law. The trial court ruled that Nexstar
was not entitled to attorney's fees and awarded attorney's fees to Gray. The court granted
KTBS's motion for judgment notwithstanding the verdict on the ground that there was no
evidence of damages and rendered judgment that Nexstar take nothing from KTBS.

 Nexstar asserts eight issues for appellate review. KTBS raises a cross-point attacking
the sufficiency of the evidence to support the jury's finding of $2,000 in damages. See Tex.
R. Civ. P. 324(c). We reverse the trial court's judgment. The cause is remanded for a new
trial. 

Background


 Gray was originally hired by Nexstar as a reporter in 2003 and signed an employment
contract. In 2004, Gray signed another contract with Nexstar as an on-air performer for a
term of employment from April 11, 2004, to May 31, 2006. The contract contained a
provision titled "Remedies and Procedure for Remedying Disputes," which stated:

 In the event Employee elects to breach this Agreement and leave
employment prior to the conclusion of the term, the Company may accept as
liquidated damages for said breach the amount of $10,000. In the event the
Company determines that the liquidated damages amount described above is
insufficient to cover all of its damages, the Company may seek to obtain
additional compensatory and consequential damages by pursuing an action
under paragraph 7(a) herein.


 In February 2005, Gray gave notice that she would be resigning from her position. 
Nexstar sent her a letter reminding her of her continuing obligations under the contract. The
letter informed Gray she would have to pay $10,000 if she left her employment. Nexstar
learned that KTBS was interested in hiring Gray and sent KTBS a letter stating that Gray was
still under contract.

 Gray stopped appearing as an on-air performer for Nexstar in March 2005. Within
two weeks of Gray's departure, she began working for KTBS.

The Declaratory Judgment and Attorney's Fees


 Nexstar's lawsuit against Gray sought "liquidated damages from Gray and/or all actual
and consequential damages proximately caused by her breach of contract." Gray filed a
counterclaim seeking a declaratory judgment that the liquidated damages provision in the
contract was an unenforceable penalty as a matter of law.

 The trial court found that the liquidated damages provision in the employment contract
was an unenforceable penalty. The jury awarded Nexstar $1.00 in nominal damages from
Gray for the breach of contract. Nexstar and Gray stipulated to the amount of reasonable
attorney's fees, but not to entitlement to attorney's fees. The trial court awarded Gray
attorney's fees. 

 In issue one, Nexstar argues the trial court erred in granting the declaratory judgment,
because Gray had simply re-asserted an affirmative defense as a request for declaratory
judgment. In issue six, Nexstar contends the trial court erred in awarding Gray attorney's
fees because Gray asserted the declaratory judgment counterclaim merely to recover
attorney's fees that were otherwise not recoverable. 

 The purpose of the Declaratory Judgments Act is to "settle and to afford relief from
uncertainty and insecurity with respect to rights, status, and other legal relations[.]" Tex.
Civ. Prac. & Rem. Code Ann. § 37.002(b) (Vernon 1997). A declaratory judgment is
appropriate only if there is a justiciable controversy and the declaration sought will resolve
the controversy. Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995). The Act
is not available to settle disputes already pending before the court. BHP Petroleum Co. v.
Millard, 800 S.W.2d 838, 841 (Tex. 1990). 

 A trial court may allow a counterclaim seeking a declaratory judgment if it is more
than a mere denial of the plaintiff's cause of action and has greater ramifications than the
original lawsuit. See id. at 842. Generally, a counterclaim will have greater ramifications
than the original claim if it would have the effect of settling future disputes between the
parties. See, e.g., id. (allowing declaratory judgment counterclaim that defined the parties'
obligations under an ongoing contract for the foreseeable future); Winslow v. Acker, 781
S.W.2d 322, 328 (Tex. App.--San Antonio 1989, writ denied) (holding trial court did not err
in allowing declaratory judgment counterclaim that would settle all future disputes regarding
royalties under deed). The counterclaim must seek affirmative relief and allege that the
defendant has a cause of action, independent of the plaintiff's claim, on which the defendant
could recover benefits, compensation, or relief. Millard, 800 S.W.2d at 841; HECI
Exploration Co. v. Clajon Gas Co., 843 S.W.2d 622, 638-39 (Tex. App.--Austin 1992, writ
denied). A counterclaim that presents no new controversy may not be asserted simply to
recover attorney's fees. Hitchcock Props. Inc. v. Levering, 776 S.W.2d 236, 239 (Tex. App.--Houston [1st Dist.] 1989, writ denied). 

 Gray sought a declaration that the remedies provision in the contract was an
unenforceable penalty and void as a matter of law. This requested declaration is essentially
a restatement of the "penalty" affirmative defense asserted in Gray's answer. See Phillips
v. Phillips, 820 S.W.2d 785, 789 (Tex. 1991) (noting that "penalty" is an affirmative defense
to an award of damages under a liquidated damages provision). She sought no greater relief
in her counterclaim than she asserted in her affirmative defense; Gray denied Nexstar's
entitlement to liquidated damages. See Millard, 800 S.W.2d at 842. Gray and Nexstar have
no ongoing relationship. See HECI Exploration Co., 843 S.W.2d at 639. Gray's declaratory
judgment counterclaim presented no new controversy. Under the circumstances, the award
of attorney's fees to Gray under the Declaratory Judgments Act was unauthorized. See
Hitchcock Props., 776 S.W.2d at 239. We sustain issues one and six. (1)



Liquidated Damages


 In issue two, Nexstar argues the trial court erred in failing to award liquidated
damages because Nexstar prevailed on the breach of contract claim, and the contract
provision was enforceable as a matter of law. Nexstar argues that liquidated damages are
appropriate because damages were difficult or incapable of estimation at the time the contract
was signed, and $10,000 was a reasonable forecast of just compensation.

 "Whether a contractual provision is an enforceable liquidated damages provision or
an unenforceable penalty is a question of law[.]" Phillips, 820 S.W.2d at 788. A liquidated
damages provision may be enforceable if the harm caused by the breach is difficult to
estimate and the amount of liquidated damages is a reasonable forecast of just compensation. 
Id. Evidence that the harm caused is difficult to estimate, and that the amount of liquidated
damages is a reasonable forecast, must be viewed as of the time the parties executed the
contract. Baker v. Int'l Record Syndicate, Inc., 812 S.W.2d 53, 55 (Tex. App.--Dallas 1991,
no writ). 

 Generally, a contractual provision that does not exclude further liability for actual
damages is not a reasonable forecast of just compensation and is an unenforceable penalty. 
Robert G. Beneke & Co., v. Cole, 550 S.W.2d 321, 322 (Tex. Civ. App.--Dallas 1977, no
writ). The provision must make clear that the amount of liquidated damages will be in lieu
of other damages. Birdwell v. Ferrell, 746 S.W.2d 338, 340 (Tex. App.--Austin 1988, no
writ). 

 The provision in this case provided for $10,000 as liquidated damages, but also stated
that "[i]n the event the Company determines that the liquidated damages amount described
above is insufficient to cover all of its damages, the Company may seek to obtain additional
compensatory and consequential damages by pursuing an action under paragraph 7(a)
herein." This provision does not limit Nexstar's recovery to liquidated damages or make
clear that liquidated damages will be recovered in lieu of actual damages; under the
provision, Nexstar could claim the "liquidated" damages and then claim any additional
damages by taking the dispute to an arbitrator under paragraph 7(a). The trial court did not
err in failing to award $10,000 as "liquidated" damages. Issue two is overruled.

Actual Damages


 In issue three, Nexstar asserts the evidence conclusively established that Nexstar
suffered damages in excess of the $1 awarded by the jury. Nexstar argues it provided
undisputed evidence that it incurred $14,615.49 in actual damages; we understand Nexstar
to argue in issue three that it proved $14,615.49 in damages as a matter of law. In the
alternative, Nexstar argues in issue four that the jury's finding of $1 in actual damages is
against the overwhelming weight of the evidence. 

 In issue eight, Nexstar argues the trial court erred in disregarding the jury's finding
on damages against KTBS for tortious interference with the contract. A judgment
notwithstanding the verdict is proper when no evidence supports the jury's finding. 
Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990). Nexstar contends the
evidence supported a finding of at least $2,000 in damages, the amount found by the jury. 
KTBS argues by cross-point that the $2,000 finding is unsupported by the evidence.

 A party attacking the legal sufficiency of evidence concerning an adverse finding on
an issue on which it has the burden of proof must demonstrate that the evidence conclusively
established all vital facts in support of the issue. Dow Chem. Co. v. Francis, 46 S.W.3d 237,
241 (Tex. 2001). If the proposition contrary to the verdict is established as a matter of law,
an appellate court must render judgment for that proposition. Id.

 In a factual sufficiency review, the appellate court considers and weighs all of the
evidence and will set aside a verdict only if the evidence is so weak or if the finding is so
against the great weight and preponderance of the evidence that it is clearly wrong and
unjust. Id.

 Nexstar points out the jury instructions on damages for interference with the contract
and breach of the contract were the same: "out of pocket" damages. The jury found $2,000
in "out of pocket" damages resulted from the interference with contract, but $1 in damages
resulted from the breach of contract. Nexstar argued in a post-judgment pleading that it was
entitled to contract damages, at the least, in "the same $2,000 awarded against Defendant
KTBS." In its claim against Gray, Nexstar argues on appeal "it is clear that the jury
improperly failed to consider the undisputed evidence regarding Nexstar being 'out of
pocket' $2,000 for the speech pathologist/talent coach because it found Nexstar was 'out of
pocket' this amount in its answer to the damages question against KTBS." (2)

 Nexstar also contends it paid $7,000 to promote a new morning show format that
featured Gray as a meteorologist. The news director testified regarding this expense as
follows:

 [Plaintiff's Counsel]: And how much was that total cost?

 [News Director]: I need to look. I'm not positive off the top of my head.

 [Q]: Well, just give me your best estimate.

 [A]: I believe it ran about $7,000.

 [Q]: Okay.

Nexstar did not show that it promoted the morning show format only because of Gray. At
the time of trial, Nexstar still aired the morning show with the same format. 

 Nexstar also argues that it is entitled to the $146.31 in makeup expenses it paid to
Gray. The employment contract states that Gray would be reimbursed for makeup expenses
for up to $50 per month. Nexstar presented two checks spent in makeup reimbursements:
$73.61 paid in November 2004; and $73.70 paid on April 20, 2004. KBTV's news director
testified that Gray used the makeup while she worked for Nexstar. Nexstar would have paid
these expenses even had Gray fully performed under the contract. 

 Nexstar asserts that it reimbursed Gray $3,110.07 for her meteorology school tuition. 
Gray acknowledged that Nexstar paid for her to attend meteorology school. KBTV's news
director testified that Nexstar did not normally pay for meteorology school but agreed to pay
Gray's tuition because she had "great potential." The trial court admitted into evidence the
checks issued by Nexstar for Gray's tuition: $1,431.50 paid on January 16, 2004; $1,194.07
paid on June 1, 2004; and $484.50 paid on July 28, 2004. The last two tuition checks, for
$1,194.07 and $484.50, were paid during the term of employment under the March 2004
contract. However, Nexstar was not required to reimburse Gray for her meteorology school
tuition expenses under the March 2004 contract. 

 Nexstar argues that it paid $2,000 to a speech pathologist, or talent coach, who
provided Gray with voice training. The talent coach trained all of the on-air performers. 
KBTV's news director would set a day planner for the coach and would allocate how much
time each individual would spend with the coach. The time an individual would spend with
the coach varied according to how long the individual worked with the station and how much
potential they had. KBTV's general manager testified that when Gray first started working
with the station, the coach spent more time with Gray to improve her voice. However,
Nexstar did not present evidence showing how much time Gray spent with the coach, nor did
it segregate Gray's time with the coach from the time the other on-air performers trained with
the coach. The record does not show whether the training occurred when Gray was first
hired under the original contract, or during the term of the second contract. 

 Finally, Nexstar also contends it incurred costs in hiring Gray's replacement and paid
for an on-air performer to fill in for Gray. While Nexstar sought candidates to replace Gray,
Gray's meteorology duties were covered by the station's chief and weekend meteorologists. 
Nexstar paid Gray's meteorology replacement $191.30 in traveling expenses, $750 in moving
expenses, and $607.81 for a plane ticket. Nexstar also paid $810 to a freelance reporter who
covered some of Gray's reporting duties. KTBS argues Nexstar would have been required
to replace Gray at the end of her contract in any event and would have incurred the costs even
without the alleged interference.

The Jury's Findings


 The findings by the jury, that Nexstar suffered $1 in out of pocket damages as a result
of Gray's breach and $2,000 in out of pocket damages as a result of KTBS's tortious
interference, address the same material fact. The measure of damages under the interference
with contract claim is the same as that under the breach of contract claim in this case. See
Am. Nat'l Petroleum Co. & Oil Invs., Ltd. v. Transcon. Gas Pipe Line Corp., 798 S.W.2d
274, 278 (Tex. 1990).

 The trial judge found no evidence to support the $2,000 damage finding and signed
a judgment notwithstanding the verdict. There is legally sufficient evidence in this record
of some damages, however. Though this record may not support an award of all of the costs
of finding a replacement, the jury could reasonably conclude some of the costs incurred in
covering Gray's job duties, hiring a freelance reporter, and finding a replacement on short
notice could have been avoided if KTBS had not interfered with the contract. See Guevara
v. Ferrer, 247 S.W.3d 662, 670 (Tex. 2007) ("[W]hen there is evidence to support some
damages it is not appropriate to render judgment."). But the jury made conflicting jury
findings on conflicting evidence concerning the same material fact. The jury also found the
same evidence did not support more than $1 in damages for the breach of contract. On this
record, a coherent judgment cannot be rendered. A new trial is required. (3) 


 Conclusion


 The trial court's judgment is reversed. The cause is remanded for a new trial. 

 REVERSED AND REMANDED. 

 

 DAVID GAULTNEY

 Justice



Submitted on March 13, 2008

Opinion Delivered June 26, 2008


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. In issue seven, Nexstar also argues the trial court abused its discretion in awarding
attorney's fees. We need not address this issue because of our resolution of issues one and
six.
2. We address the arguments made and issues raised despite Nexstar's failure to object
to the asserted conflict before the jury was discharged. See generally C. & R. Transport, Inc.
v. Campbell, 406 S.W.2d 191, 195-96 (Tex. 1966); Little Rock Furniture Mfg. Co. v. Dunn,
148 Tex. 197, 222 S.W.2d 985 (1949). But see Columbia Med. Ctr. of Las Colinas v. Bush,
122 S.W.3d 835, 861 (Tex. App.--Fort Worth 2003, pet. denied); Coastal Chem, Inc. v.
Brown, 35 S.W.3d 90, 99 (Tex. App.--Houston [14th Dist.] 2000, pet. denied).
3. In issue five, Nexstar argues the trial court erred in denying its request for attorney's
fees because it prevailed on its breach of contract claim against Gray. Because we reverse
and remand the cause for a new trial, we do not reach this issue.