Opinion filed August 23, 2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00306-CV 

                                                    __________

 

                                          CAREFLITE,
Appellant

                                                             V.

                                     RURAL
HILL EMERGENCY 

                              MEDICAL
SERVICES, INC., Appellee



 

                                   On
Appeal from the 66th District Court

                                                              Hill
County, Texas

                                                     Trial
Court Cause No. 47,865

 



 

O P I N I O N

            CareFlite
sought a writ of mandamus against Rural Hill Emergency Medical Services, Inc., seeking
to compel Rural Hill to produce information requested under the Texas Public
Information Act (TPIA), Tex. Gov’t Code
Ann. ch. 552 (West 2012).  Rural Hill filed a general denial and a counterclaim
under the Uniform Declaratory Judgments Act[1]
(UDJA) in which it sought attorney’s fees and a declaration that Rural Hill is
not a governmental body as set forth by and subject to the TPIA.  Both sides
moved for summary judgment.  The trial court granted Rural Hill’s motion and denied
CareFlite’s motion.  The trial court then severed the summary judgment from a
second, unrelated suit that had been consolidated into the cause of action and
rendered a final order in which it disposed of all claims and parties in the
action that were the subject of the first suit.

            CareFlite
contends in two issues that (1) the trial court erred when it granted summary
judgment and attorney’s fees for Rural Hill on a declaratory judgment
counterclaim that did nothing more than assert a defense to CareFlite’s right
to mandamus relief and (2) the trial court erred in granting summary judgment
for Rural Hill and denying summary judgment for CareFlite when the undisputed
facts show that Rural Hill was supported in whole or in part by public funds,
thereby making it a governmental body subject to the disclosure requirements of
the TPIA.  We affirm.

            Rural
Hill is a not-for-profit corporation that provides emergency medical transportation
and related services exclusively in Hill County.  It has contracts with the
cities of Mt. Calm and Hubbard to make those services available twenty-four
hours a day, seven days per week.  Rural Hill derives its revenue in three ways:
(1) monthly payments from the City of Mt. Calm; (2) monthly payments from
the City of Hubbard; and (3) payment from the patients for whom it renders specific
medical transportation and related services.  The monthly payments Rural Hill
receives from each of the cities are calculated according to a formula set
forth in each city’s respective contract.  In addition to the monthly payment,
the contract between Rural Hill and the City of Hubbard also provides that the
city will provide Rural Hill with a facility and utilities.   Several years
after the contract’s execution, Rural Hill moved into its own building, at
which point the City of Hubbard began to pay Rural Hill an additional monthly
payment of $800 in lieu of providing the facility and utilities.

            CareFlite
is also a not-for-profit provider of emergency medical services.  Through its
attorney, CareFlite sent a letter to Rural Hill requesting, pursuant to the
TPIA, that Rural Hill produce the following documents: “(1) financial records
(balance sheets, income statements, listings of expense, and collections), (2)
standard service rates, (3) actually billed rates or charges for any and all
services, and (4) tax returns and schedules, including Form 990’s.”  When Rural
Hill did not produce the requested information and did not request a ruling
concerning the request from the attorney general, CareFlite filed a petition
for writ of mandamus, in which it asked the trial court to compel Rural Hill to
provide the information.

            Both
of the motions for summary judgment were traditional ones. Tex. R. Civ. P. 166a(c).  We
review the trial court’s summary judgment de novo.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident
Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  A trial court must
grant a traditional motion for summary judgment if the moving party establishes
that no genuine issue of material fact exists and that the movant is entitled
to judgment as a matter of law.  Rule 166a(c); Lear Siegler, Inc. v. Perez,
819 S.W.2d 470, 471 (Tex. 1991).  In order for a defendant to be entitled to
summary judgment against the plaintiff’s claims, it must either disprove an
element of each of the plaintiff’s causes of action or establish an affirmative
defense as a matter of law. Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420,
425 (Tex. 1997); Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911
(Tex. 1997).

            Once
the movant establishes a right to summary judgment, the nonmovant must come
forward with evidence or law that precludes summary judgment.  City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678–79 (Tex. 1979). 
When reviewing a traditional summary judgment, the appellate court considers
all the evidence and takes as true evidence favorable to the nonmovant.  Am.
Tobacco Co., 951 S.W.2d at 425; Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548–49 (Tex. 1985).  The appellate court “must consider whether
reasonable and fair-minded jurors could differ in their conclusions in light of
all of the evidence presented” and may not ignore “undisputed evidence in the
record that cannot be disregarded.”  Goodyear Tire & Rubber Co. v. Mayes,
236 S.W.3d 754, 755, 757 (Tex. 2007).

            When
both parties move for summary judgment on the same issues and the trial court
grants one motion and denies the other, we consider the summary judgment
evidence presented by both sides and determine all questions presented.  If we
determine that the trial court erred, we must render the judgment that the
trial court should have rendered.  Valence Operating, 164 S.W.3d at
661.  When a trial court does not specify the grounds it relied upon to grant
the summary judgment, we must affirm the summary judgment if any of the grounds
stated in the motion for summary judgment are meritorious.  FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 873 (Tex. 2000).

            In
its second issue, CareFlite maintains that the trial court erred when it
granted Rural Hill’s motion for summary judgment and denied its motion for
summary judgment.  It contends Rural Hill is a governmental body subject to the
TPIA.  CareFlite bases its argument, in part, on the proposition that Rural
Hill was supported in whole or in part by public funds because the contracts
Rural Hill had with the cities were not arms-length transactions.  It
additionally argues that Rural Hill comes under the TPIA for two reasons: first,
because the services contemplated by the contracts traditionally have been
provided by government and, second, because Rural Hill and the cities have a
common objective or purpose.  

            We
begin our analysis of the matters set forth in CareFlite’s second issue with a
recognition that the underlying purpose of the TPIA is to provide transparency
in governmental affairs.  Thus, the TPIA begins in Section 552.001:

            (a)
Under the fundamental philosophy of the American constitutional form of
representative government that adheres to the principle that government is the
servant and not the master of the people, it is the policy of this state that
each person is entitled, unless otherwise expressly provided by law, at all
times to complete information about the affairs of government and the official
acts of public officials and employees.  The people, in delegating authority,
do not give their public servants the right to decide what is good for the
people to know and what is not good for them to know.  The people insist on
remaining informed so that they may retain control over the instruments they
have created.  The provisions of this chapter shall be liberally construed to
implement this policy.

 

            (b) This
chapter shall be liberally construed in favor of granting a request for
information.

 

            CareFlite
filed its original petition for writ of mandamus, in which it sought an order
to compel Rural Hill to produce information under the TPIA.  Section 552.321(a)
provides, in pertinent part, “A requestor . . . may file suit for a
writ of mandamus compelling a governmental body to make information available
for public inspection if the governmental body refuses to request an attorney
general’s decision . . . or refuses to supply public information.” 
In response to CareFlite’s petition, Rural Hill filed a counterclaim in which
it sought a declaration that it was not a governmental body subject to the
TPIA.  Rural Hill asserts that it is not subject to the TPIA and, therefore, is
not required to provide CareFlite with the information it requested.  Rural
Hill specifically bases its assertion that it is not subject to the TPIA on its
claim that it is not a governmental body as defined by the TPIA.

            The
TPIA contains provisions that pertain to the required disclosure of certain
information by a governmental body when that governmental body is requested to
do so in accordance with the TPIA.  Our concern in this case is whether Rural
Hill is a governmental body.

            There
are several definitions of “governmental body” within the TPIA, but the only
one that is at issue in this appeal is this one that makes an entity a
governmental body as to: “the part, section, or portion of an organization,
corporation, commission, committee, institution, or agency that spends or that
is supported in whole or in part by public funds.”  Section
552.003(1)(A)(xii).  “‘Public funds’ means funds of the state or of a
governmental subdivision of the state.”  Section 552.003(5).

            It
is undisputed that Rural Hill receives public funds.  We have set forth the
sources of Rural Hill’s revenue earlier in this opinion, and a portion of that
revenue comes from public funds supplied by the City of Hubbard and the City of
Mt. Calm.

            But,
the fact that Rural Hill receives public funds does not make it a governmental
body under the TPIA automatically.  To be considered a governmental body, the
public funds that it receives must be the type of “support” that places Rural
Hill within the purview of the TPIA.

            Neither
our research nor that of either party has uncovered an opinion published by a
Texas court that directly addresses the definition of “support” under the
TPIA.  However, in 1988, the United States Court of Appeals for the Fifth Circuit
addressed this issue in Kneeland v. National Collegiate Athletic Association,
850 F.2d 224 (5th Cir. 1988).  In Kneeland, the court analyzed similar
language of the TPIA predecessor, the Texas Open Records Act (TORA).  850 F.2d
at 228.  Like this court, the Fifth Circuit noted that there were no Texas
cases directly on point.  Id.  To inform its decision, the court looked
to formal opinions of the Texas Attorney General.  Id.  Then, with the
TORA, as now, with the TPIA, the Texas Attorney General is charged with issuing
opinions concerning its interpretation of the provisions of the act when
requested.  Id.; Section 552.301.  A review of the applicable formal
opinions by the Texas Attorney General will inform our decision here.

            In
Open Records Decision No. 228, the attorney general was called upon to
determine whether the North Texas Commission was a governmental body for
purposes of the TORA.  Tex. Att’y Gen. OR1979-228
(ORD-228).  The North Texas Commission was a nonprofit corporation that
was chartered to promote the interest of the Dallas-Fort Worth metropolitan
area.  Id.  The City of Fort Worth contracted with the North Texas
Commission to provide that promotion, and it agreed to pay the commission
$80,000 for three years.  Id.  It was the attorney general’s opinion
that the phrase “supported in whole or in part by public funds” applied to an
agreement between a political subdivision and any “organization, corporation,
commission, committee, institution, or agency” whereby public funds are
transferred from the political subdivision to any such entity but which does
not “[impose] a specific and definite obligation on the [entity] to provide a
measurable amount of service in exchange for a certain amount of money as would
be expected in a typical arms-length contract for services between a vendor and
purchaser.”  Id.  

            The attorney
general concluded that the contract between the City of Fort Worth and the
commission did not impose a “specific and definite obligation on the Commission
to provide a measurable amount of service in exchange for a certain amount of
money.”  Id.  In essence, the City of Fort Worth and the commission had
not entered into an arms-length transaction.  Id.  Therefore, the City
of Fort Worth was providing for the general support of the commission with
public funds, and the commission was a governmental body subject to the TORA.  Id. 


            In
1982, the attorney general issued Open Records Decision No. 302.  Tex. Att’y Gen. OR1982-302 (ORD-302).  There,
the question was whether the Brazos County Industrial Foundation was a
governmental body subject to the TORA.  Id.  The foundation was a
nonprofit corporation that, in part, had a focus on rendering “aid to
manufacturing and industrial enterprises situated in [Brazos County], and to
induce the location in said County of other manufacturing and industrial
establishments.”  Id.

            In ORD-302,
the attorney general compared the Brazos County Industrial Foundation with the
North Texas Commission in ORD-228.  Id.  The Brazos County Industrial
Foundation had received an unrestricted grant of $48,000 from the City of
Bryan.  Id.  It was the attorney general’s opinion that this grant was
no different than the relationship considered in ORD-228; in essence, the
transaction was not an arms-length one.  Id.  Thus, the Brazos County
Industrial Foundation was a governmental body and subject to the TORA.  Id.

            Ambulance
activity reports of Amarillo Medical Service were, in part, the subject of
Attorney General Open Records Decision No. 343.  Tex. Att’y Gen. OR1982-343 (ORD-343). Amarillo Medical
Service was a private, nonprofit corporation.  Id.  It entered into a
contract with Amarillo Hospital District to furnish transportation and
emergency services to persons who used the district’s facilities.  Id.  The
attorney general noted that the contract required Amarillo Medical Service to
perform specific duties.  Id.  In return, Amarillo Medical Service was
to receive “each month a sum equal to the differences between cash receipts and
approved operating expenditures” of Amarillo Medical Service.  Id.  The
opinion of the attorney general was that the agreement between the district and
Amarillo Medical Service imposed “a definite obligation ‘to provide a
measurable amount of service in exchange for a certain amount of money.’”  Id. 
Essentially, then, the district and Amarillo Medical Service had entered into
an arms-length transaction, and Amarillo Medical Service was not “supported in
whole or in part by public funds” and was, therefore, not a governmental body
subject to the TORA.  Id.

In
Opinion No. JM-821, the attorney general cautioned against relying on the
outcome in the Amarillo Medical Service case.  Tex. Att’y Gen. Op. No. JM-821 (1987).  It disagreed with the
outcome of that opinion because a close reexamination of the contract in that decision
showed that the hospital district (a governmental body) there was to provide
ambulances and to pay for the general monthly operating expenses of Amarillo Medical
Service.  Id.  Additionally, district approval was required before the
service could make expenditures or hire personnel.  Id.  We note that those
factors are not involved in the contracts between the cities and Rural Hill.

The
inquiry in Attorney General Opinion No. JM-821, to which we just referred, was
whether the Cy-Fair Volunteer Fire Department, a nonprofit corporation, was
subject to the TORA as a governmental body.  Id.  The department
received public funds by virtue of a contract with the Harris County Rural Fire
Prevention District No. 9.  Id.  In return, the department was to
perform fire-fighting services within the district.  Id.  The attorney general
noted that the main issue in this type of case is whether the private entities
“are supported in whole or in part by public funds or whether they expend
public funds.”  Id.

            Under
the contract between the Cy-Fair Volunteer Fire Department and the Harris
County Rural Fire Prevention District No. 9, the bulk of the funds received by
the district from tax collections, less costs associated with administration,
were transferred by the district to the department.  Id.  The attorney general
opined that the manner of funding was not the sole dispositive issue to be
examined when determining whether an entity is subject to the TORA.  Id. 
Other issues might include whether there is a common objective or purpose, whether
an agency-type relationship is created (although as noted in footnote 1 of its
opinion, the agency is not the same as that in tort responsibility), and
whether the services provided under the contract are traditionally provided by
governmental bodies.  Id.  However, “[t]he overall nature of the
relationship created by the contract is relevant in determining whether the
private entity is so closely associated with the governmental body that the
private entity falls within the Open Records Act.”  Id.

             The
attorney general also noted that volunteer firefighters have a closer
relationship with governmental bodies than others.  Id.  For instance,
by statute, political subdivisions may provide workers’ compensation coverage
and may provide relief and retirement benefits.  Id.  Further, it was
noted in the opinion that the legislature may provide benefits to survivors of
a volunteer firefighter killed in the performance of “official duties.”  Id.
(citing Tex. Const. art. III, § 51-d). 
These provisions, according to the attorney general, make it more probable that
a volunteer fire department will come under the TORA.  Id.  Nonetheless,
according to the attorney general, the answer to the inquiry depends upon the
circumstances of each case.  Id.

            The
contract between the Cy-Fair Volunteer Fire Department and the Harris County
Rural Fire Prevention District No. 9 provided: “The Department will provide the
emergency ambulance services, the fire prevention services, the fire fighting
services in the geographic District and will not look to the District to
provide any services whatsoever except for the providing of funds to enable the
Department to carry on its duties and responsibilities.”  Id.  The
contract required that the department submit one-year operating budgets and a
three-year capital expenditure budget for planning purposes and provided for
continuing annual renewals.  Id. There is no indication in the opinion
that the department received funds from any source other than the district.  Id. 
It was the opinion of the attorney general that the contract involved the
general support of the department’s activities with public funds and that it
was subject to the TORA.  Id.

            In
another attorney general opinion, LO-93-55, the attorney general responded to
the issue of whether certain chamber of commerce subdivisions were governmental
bodies subject to the Open Meetings Act.  Tex.
Att’y Gen. LO-93-55 (1993); see Tex.
Gov’t Code Ann. ch. 551 (West 2012).  In the course of answering that
question, the attorney general noted that the term “governmental body” was
defined differently in the Open Meetings Act than in the Open Records Act.  LO-93-55. 
The Open Meetings Act did not contain a provision similar to the one in the
Open Records Act that included within its definition of “governmental body” as
“the part, section, or portion of every organization, corporation, commission,
committee, institution, or agency which is supported in whole or in part by
public funds, or which expends public funds.”  Id.  Therefore, while the
chamber of commerce subdivisions might receive public funds and not fall within
the purview of the Open Meetings Act, the attorney general opined that the
subdivisions could fall under the Open Records Act to the extent that they
received public “funds from a governmental body (and such funds do not
constitute a quid pro quo).”  Id.

            In
its opinion in Kneeland, the Fifth Circuit explained that, in its review
of the Texas Attorney General opinions, it perceived “three distinct patterns
of analysis” in regard to this issue.  Kneeland, 850 F.2d at 228. 
First, “an entity receiving public funds becomes a governmental body under the
Act, unless its relationship with the government imposes ‘a specific and
definite obligation . . . to provide a measurable amount of service
in exchange for a certain amount of money as would be expected in a typical
arms-length contract for services between a vendor and purchaser.’”  Id.
(quoting Opinion No. JM-821).  Second, “a contract or relationship that
involves public funds and that indicates a common purpose or objective or that
creates an agency-type relationship between a private entity and a public
entity will bring the private entity within the . . . definition of a
‘governmental body.’”  Id.  Finally, “some entities, such as volunteer
fire departments, will be considered governmental bodies if they provide ‘services
traditionally provided by governmental bodies.’”  Id.

            We
do not disagree with the “patterns” or issues that the Fifth Circuit
gleaned from a study of the attorney general opinions, but we believe that
there are sub-patterns or sub-issues within each pattern or issue.  We also
believe that no one sub-pattern or sub-issue in and of itself is dispositive of
the main pattern or issue of whether a particular entity, in a particular
circumstance, is or is not a governmental body.  We believe that the
overarching consideration is, in these sub-issues, as indicated by the attorney
general in Opinion No. JM-821, whether the overall nature of the relationship
created by the contract is such that the private entity is “so closely
associated with the governmental body that the private entity falls within the
Open Records Act.”  Opinion No. JM-821.  The answer to the inquiry depends upon
the circumstances of each case.  Id.  And, if it is determined that
public funds are for the general support of the private entity, the entity is
subject to the TPIA.  Id. (citing
ORD-228).

            We
will take CareFlite’s arguments each in turn with an eye toward the stated
purpose of the TPIA and the various standards set forth in the attorney general
opinions.  As we do that, we do so realizing that no one standard or sub-pattern
or sub-issue is dispositive and that it is relevant to look at the
circumstances of this case on an individual basis to determine whether Rural
Hill is “so closely associated with the governmental body that the private
entity falls within the Open Records Act.”  Opinion No. JM-821.

            CareFlite
argues that the contracts between the cities and Rural Hill do not provide for
an arms-length commercial services contract as would normally exist between a
vendor and a purchaser.  CareFlite advances four reasons in support of its
argument.

            We
will address CareFlite’s first and third arguments under its second issue on
appeal together.  First, CareFlite maintains that the contracts between Rural
Hill and each of the cities do not impose “a specific and definite obligation”
on Rural Hill “to provide a measurable amount” of emergency medical services.  Kneeland,
850 F.2d at 228.  In its third argument, CareFlite essentially takes the
position that the services that Rural Hill provides are “in exchange” for the
payments from its patients, not the cities’ public funds and that, therefore,
there is no quid pro quo.

We
agree that Rural Hill does provide services to its patients in exchange for the
payments it receives from them.  However, the contracts between Rural Hill and
the cities also list additional specific services that Rural Hill is obligated
to provide in exchange for the payments it receives from the cities.  For
example, the contracts obligate Rural Hill to “[a]ssure [Rural Hill] and its
personnel are appropriately trained, licensed, and certified for the levels of
service provided” and “[a]ssure . . . that qualified personnel are available to
respond to each emergency call on which [Rural Hill] is dispatched.”  The
services that Rural Hill is to provide to the cities under its contracts, as
far as the cities are concerned, are not solely the individual emergency
responses but also include continuous emergency services supported with
adequate equipment and adequately trained and qualified personnel, the minimum
standards of and for which are stated in the contracts.  Additionally, these minimums
should be readily ascertainable from industry standards.  We believe that this
constitutes a sufficient quid pro quo as is referred to in LO-93-55. 
Therefore, we disagree with CareFlite’s first and third arguments under its
second issue on appeal.

            In
its second argument under its second issue on appeal, CareFlite maintains that,
because the contracts set the amount of payment to Rural Hill at an amount that
is based on annually appraised property values, which may fluctuate, the
services are not in exchange for a “certain amount of money.”  The Hubbard contract
provides the following:

The length of this
agreement is for a five year term with monies for the first year to be
calculated based on $.07 per 100 dollars taxable value for the City of Hubbard
and its [extra territorial jurisdiction].  This amount of monies will be
calculated each year of this contracts [sic] term on the date set forth by the
Hill County Appraisal District on which the Hill County Appraisal District
certifies the tax role.  For each additional year the amount is not to exceed $32,000
per year unless agreed upon by the council for the City of Hubbard during the
annual budget process.

 

The Mt. Calm contract
contains similar language.

Because
appraised property values fluctuate, CareFlite argues, the contracts do not
require the cities to provide Rural Hill with a certain amount of money. 
Therefore, asserts CareFlite, Rural Hill does not meet that part of the
criteria for an arms-length transaction.

            Rural
Hill argues that the potential fluctuation under the contracts do not mean that
the contracts fail to require payment of a certain amount of money.  Rather, drawing
the comparison to an attorney working under a contingent fee agreement, Rural
Hill argues that, although the revenue may fluctuate, the amount is discernible
against a measurable baseline.

            Neither
party cites to any source to support its arguments of what qualifies as a
“certain amount of money.”  After the Kneeland court reviewed three
attorney general opinions where the contractual obligations imposed were not
specific enough to fall under the exception, the court discussed ORD-343 in
which an obligation to provide specific measurable services in exchange for a
specific payment was found.[2] 
Kneeland, 850 F.2d at 229.  In its examination of the attorney general’s
opinion and conclusion that the challenging entity, an ambulance service, was
not a governmental body, the court noted that a formula was used to determine
payment under the contract.  Id.  In exchange for its services, the
challenging entity received “each month a sum equal to the difference between
cash receipts and approved operating expenditures of the ambulance service.”  Id.
(quoting ORD-343).  Because the
contracts in this case provide a formula for determining the exact amount Rural
Hill is to be paid, we hold that the contracts do provide for the payment of a
“certain amount of money.”  We disagree with CareFlite’s argument to the
contrary.

In
its fourth argument under its second issue on appeal, CareFlite maintains that
the contracts do not constitute an arms-length transaction because the contracts’
provisions providing for the cities’ review of Rural Hill’s budget and for the City
of Hubbard’s supplying free rent and utilities are not what “would be expected
in a typical arms-length contract for services.”  Both of the cities’ contracts
specify that Rural Hill will “[p]rovide the city with a quarterly budget and
service report to the council and verbal reports as requested.”

In
support of this part of its argument that this is not typical of an arms-length
contract, CareFlite directs us to the Cy-Fair Volunteer Fire Department opinion
that we have discussed above.  Opinion No. JM-821.  CareFlite specifically
points to the fact that the department’s contract required it to provide the
governmental entity with “one-year operating budgets and a three-year capital
expenditure budget for planning purposes.”  Id.  In our examination of
the opinion, we note that the contract there provided that the funds were
provided “to enable the Department to carry on its duties and responsibilities”
and that the department received public funds to provide all of the
district’s needed services.  We also note the particular distinction given to
volunteer fire departments generally as referenced by the attorney general.  Rural
Hill, however, received about eighty percent of its funds from its patients and
performed services other than emergency services that were outside the scope of
the contracts it had with the cities.

Additionally,
CareFlite argues that the contract cannot be an arms-length transaction because
the City of Hubbard agreed to supply free rent and utilities and that such an
agreement would not be expected in a typical arms-length contract for services. 
We have found no authority that requires that a governmental body’s part of a
quid pro quo be satisfied exclusively with dollars.  Consideration can take
many forms.  See generally Roark v. Stallworth Oil & Gas, Inc.,
813 S.W.2d 492, 496 (Tex. 1991) (discussing consideration).  In any event, we
do not find the form of consideration to be solely dispositive of the
“arms-length transaction” issue.

Our
review of this case in light of the attorney general opinions that we have
discussed leads us to hold that the transactions between the cities and Rural
Hill were arms-length ones.  The contracts imposed upon Rural Hill the
obligation to provide a measurable amount of service in exchange for a certain
amount of money as would be expected in a typical arms-length contract for
services between a vendor and purchaser.

In
its second issue, CareFlite presents other arguments not related to its
arms-length transaction ones.  CareFlite argues that Rural Hill comes within
the definition of a governmental body because both the cities and Rural Hill
share the “common purpose or objective” of locally providing emergency medical
services to residents.  See Kneeland, 850 F.2d at 228.

            CareFlite
additionally argues in Issue Two that emergency medical services are “services
traditionally provided by governmental bodies” and that, therefore, Rural Hill
should be considered a governmental body under the TPIA.  See Kneeland,
850 F.2d at 228.  In support of this argument, CareFlite directs our attention
to a 2003 Attorney General Open Records Letter Ruling, which noted “that
emergency medical services are ‘traditionally provided by governmental
bodies.’”  Tex. Att’y Gen. OR2003-2402
(ORD-2402) (quoting Opinion No. JM-821).

CareFlite
has not directed us to, and we have not found, any authority, primary or
persuasive, that stands for the proposition that, if a private entity and a
governmental body share a common purpose or objective, the private entity is
automatically a governmental body for purposes of the TPIA.  Neither are we
aware of any like authority when an entity provides services traditionally provided
by governmental bodies.  Nor, with the modern changes in the way emergency
services are delivered, can we say categorically that emergency medical
services are traditionally provided by governmental bodies.  In ORD-2402, the
attorney general does not include the statement “that emergency medical
services are ‘traditionally provided by governmental bodies’” in its analysis
of the facts or its conclusion.  We are aware, however, of the statements of
the attorney general that each situation is to be examined on a case-by-case
basis and that the overall nature of the relationship is relevant in a determination
of whether a private entity is a governmental body for purposes of the TPIA.  Opinion
No. JM-821.  Because the contracts imposed upon Rural Hill the obligation to
provide a measurable amount of service in exchange for a certain amount of
money as would be expected in a typical arms-length contract for services
between a vendor and purchaser and because we are not persuaded that
CareFlite’s other arguments show that the overall nature of the relationship
created by the contracts is such that Rural Hill is “so closely associated with
the governmental body that [it] falls within the [TPIA],” we hold that the
trial court was correct in its determination that Rural Hill was not a
governmental body and, therefore, not subject to the TPIA.  Issue Two is
overruled.

In
its first issue, CareFlite complains that the trial court erred when it granted
Rural Hill’s motion for summary judgment.  It argues that Rural Hill could not
obtain a judgment under the UDJA when it sought nothing more than a favorable
ruling on a defense to CareFlite’s right to mandamus relief.  However, seeking
declaratory relief that an entity is not a governmental body as set forth under
the TPIA and mandamus relief under the same are not mutually exclusive.  See,
e.g., Blankenship v. Brazos Higher Educ. Auth., Inc., 975 S.W.2d 353
(Tex. App.—Waco 1998, pet. denied).  CareFlite is correct in its assertions
that, generally, a UDJA counterclaim may not be asserted on a claim already
pending before the court, Staff Industries, Inc. v. Hallmark Contracting,
Inc., 846 S.W.2d 542, 547 (Tex. App.—Corpus Christi 1993, no writ), nor may
a UDJA counterclaim be creatively asserted to contend that a plaintiff cannot
make out an element of its case or to state a defense to a plaintiff’s case.  BHP
Petroleum Co. v. Millard, 800 S.W.2d 838, 841 (Tex. 1990).  However, “when
a declaratory judgment counterclaim has greater ramifications than the original
suit, the court may allow the counterclaim.”  BHP Petroleum, 800 S.W.2d
at 842 (quoting Winslow v. Acker, 781 S.W.2d 322, 328 (Tex. App.—San
Antonio 1989, writ denied).  Here, Rural Hill sought a declaration of its
rights and interests under both the TPIA and the contracts by which it received
payment for services rendered to the City of Hubbard and the City of Mt. Calm. 
Although the resolution of the declaration that Rural Hill sought does provide
a defense to the action CareFlite brought, that is not its only effect.  The
trial court’s determination that, based on the evidence before it—including the
contracts between Rural Hill and the cities—Rural Hill is not a governmental
entity under the TPIA has the additional foreseeable effect of defining Rural
Hill’s status under the TPIA so long as its revenue conditions remain the
same.  Because Rural Hill’s counterclaim has greater ramifications than
CareFlite’s original suit, we hold that the trial court did not err when it
granted Rural Hill’s motion for summary judgment and awarded attorney’s fees
under the UDJA.  Id.  Issue One is overruled.

            The
judgment of the trial court is affirmed.

 

 

                                                                                                JIM
R. WRIGHT

                                                                                                CHIEF
JUSTICE

 

August 23, 2012

Panel consists
of: Wright, C.J.,                                               

McCall, J., and
Kalenak, J.









[1]Tex. Civ. Prac. & Rem.
Code Ann. ch. 37 (West 2008).

 





[2]As discussed supra, the attorney general has cautioned
against relying on ORD-343’s outcome.  In Kneeland, the court recognized
this as well, but explained that the caution is based on the attorney general’s
reappraisal of the facts of ORD-343—specifically, “that the ambulance service
could not make expenditures or personnel decisions without approval of the
public body”—not because of its exposition of the law.  Kneeland, 850
F.2d at 231.